COPY

1  MAIER SHOCH LLP
2  ERIC R. MAIER, SBN 182808
    emaier@maiershoch.com
3  LOUIS E. SHOCH, SBN 205557
    lshoch@maiershoch.com
4  1001 Hermosa Avenue, Suite 206
   Hermosa Beach, California 90254
5  Telephone:  (310) 200-9065
   Facsimile:  (310) 634-0361
6  Attorneys for
7  UBS Securities LLC

FILED
CLERK, U.S. DISTRICT COURT

MAY 23 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

8
9              UNITED STATES DISTRICT COURT
10             CENTRAL DISTRICT OF CALIFORNIA
11
12  UBS SECURITIES LLC,                 CASE NO. CV14-03997 - FMO (MAN)
13                  Movant,
                                        DECLARATION OF LOUIS SHOCH
14          v.
15  THIRD EYE CAPITAL
    CORPORATION,
16
17                  Respondent.
18  ─────────────────────────────
19
20
21
22
23
24
25
26
27
28

I, Louis E. Shoch, declare:

1.    I am a member of the bar of this Court and a partner with the law firm of Maier Shoch LLP, attorneys of record for UBS Securities LLC.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify thereto.

2.    Attached hereto as Exhibit "A" is a true and correct copy of the subpoena to produce documents that UBS Securities LLC served on Third Eye Capital on November 8, 2013.  Third Eye Capital's agent for service of process in California is Ron Sittler.  Attached hereto as Exhibit "A-1" is a true and correct copy of a "Business Entity Detail" from the California Secretary of State's website confirming same.

3.    Attached hereto as Exhibit "B" is a true and correct copy of Third Eye Capital's Response to Subpoena to Produce Documents Issued by UBS.  The Response was served via U.S. Mail on November 29, 2013.  No documents were produced by Third Eye Capital.

4.    On December 11, 2013, I called Ron Sittler, Third Eye Capital's attorney, to meet and confer regarding Third Eye Capital's Response to Subpoena to Produce Documents Issued by UBS.  Mr. Sittler and I discussed the parties' respective positions.  I explained that I did not believe Third Eye Capital's objections had merit and that documents should be produced immediately.  I offered to provide Mr. Sittler with case law demonstrating that Third Eye Capital's objection that it did not have to produce responsive documents located outside of California lacked merit.

5.    Attached hereto as Exhibit "C" is a true and correct copy of a meet and confer letter I sent to Ron Sittler via U.S. Mail on December 16, 2013.

6.    On January 8, 2014, I called Ron Sittler again to meet and confer regarding Third Eye Capital's Response to Subpoena to Produce Documents Issued by UBS.  During this call, Mr. Sittler agreed that Third Eye Capital would produce

1   documents responsive to the subpoena.

2        7.    Attached hereto as Exhibit "D" is a true and correct copy of a letter I
3   sent to Ron Sittler via U.S. Mail on January 8, 2014, confirming Third Eye Capital's
4   agreement to produce documents responsive to the subpoena.

5        8.    Attached hereto as Exhibit "E" is a true and correct copy of an email I
6   received from Ron Sittler dated January 15, 2014, wherein he states that: "After
7   further discussions with my client, they are adamantly opposed to producing any
8   documents."

9        9.    Attached hereto as Exhibit "F" is a true and correct copy of a meet and
10  confer letter I sent to Ron Sittler via email, facsimile and U.S. Mail on January 27,
11  2014. This letter was sent pursuant to, and in accordance with, Local Rule 37-1 and
12  requested an in-person meet and confer conference.

13       10.   Mr. Sittler and I met in-person on February 12, 2014 to meet and confer
14  in accordance with Local Rule 37-1. During the meet and confer session, having
15  reviewed the case law provided and referenced in my January 27, 2014 letter, Mr.
16  Sittler agreed that all of the objections raised by Third Eye Capital, with the
17  exception of one regarding "no one in California has control of the documents"
18  lacked merit. Mr. Sittler stated that he would speak with his client and determine if
19  they would produce documents or stand on the one remaining objection that "no one
20  in California has control of the documents." Mr. Sittler stated that he would let me
21  know his client's final position by Tuesday, February 18, 2014.

22       11.   I did not hear from Mr. Sittler on February 18, so I called and emailed
23  him on February 20. A true and correct copy of my February 20, 2014 email to Mr.
24  Sittler is attached hereto as Exhibit "G". I did not receive any response to my
25  February 20 email or telephone call.

26       12.   I again called and emailed Mr. Sittler on February 25, 2014 to find out
27  if documents would be produced or if Third Eye Capital was going to stand on its
28  one remaining objection that "no one in California has control of the documents." A

1  true and correct copy of my February 25, 2014 email to Mr. Sittler is attached hereto

2  as Exhibit "G".

3       13.    On February 26, 2014, I received an email from Mr. Sittler confirming

4  that no documents would be produced.  A true and correct copy of Mr. Sittler's

5  February 25, 2014 email is attached hereto as Exhibit "G".

6       14.    Attached hereto as Exhibit "H" is a true and correct copy of relevant

7  portions of Aemetis, Inc.'s latest public filing, its Form 10-K Annual Report filed on

8  or about March 11, 2014.  The 10-K confirms that Third Eye Capital is a significant

9  shareholder of Aemetis, Inc.

10      15.    Attached hereto as Exhibit "I" are portions of the deposition of Eric A.

11 McAfee, Chief Executive Officer of Aemetis, Inc., confirming that Third Eye

12 Capital is Aemetis, Inc.'s largest, or second largest, shareholder and that Aemetis

13 needs Third Eye's approval to pay any amount to UBS.

14      16.    I provided Third Eye's counsel, Mr. Sittler, with UBS' portion of the

15 Joint Statement and the Shoch Declaration on March 28, 2014.

16      17.    Attached hereto as Exhibit "J" is a true and correct copy of Third Eye's

17 portion of the Joint Stipulation that was provided to me on April 10, 2014.  Third

18 Eye did not include a declaration, nor did its portion of the Joint Statement reference

19 any declaration or indicate that any declaration would be forthcoming.  The April 10

20 document contained no mention that anything in the Shoch Declaration was not

21 accurate.  This includes the Shoch Declaration's representations regarding Third

22 Eye's prior agreement to produce documents (*see* paras. 6-8), and that all objections

23 raised with the exception of "no one in California has control of the documents"

24 lacked merit (*see* paras. 10-12).

25      18.    Attached hereto as Exhibit "K" is a true and correct copy of an email I

26 received from Ron Sittler on April 10, 2014, asking if he could "look at the brief one

27 last time before you file it."

28      19.    I pasted Third Eye's April 10 portions of the Joint Stipulation into the

---

4

DECLARATION

1  document.  Other than pasting in Third Eye's April 10 portions of the Joint

2  Stipulation, I made no substantive changes to the Joint Stipulation.  Per Mr. Sittler's

3  request, I sent it back to Mr. Sittler on April 20, 2014 for a final review to correct

4  typographical or other minor errors prior to filing.

5        20.    On April 22, I received an entirely new and different Third Eye portion

6  of the Joint Stipulation, along with a declaration (entirely new), from Mr. Sittler's

7  office.  A true and correct copy of the new Third Eye portions of the Joint

8  Stipulation and Sittler Declaration received on April 22 is attached hereto as Exhibit

9  "L".  Third Eye's completely new Joint Stipulation and Sittler Declaration make an

10  assortment of accusations that were not contained in the original brief (and there

11  was originally no declaration at all).  As noted above, this new brief and declaration

12  constituted the first time that, among other things, any suggestion was made that the

13  Shoch Declaration was not accurate.  This includes the Shoch Declaration's

14  representations regarding Third Eye's prior agreement to produce documents (*see*

15  paras. 6-8 above), and that all objections raised with the exception of "no one in

16  California has control of the documents" lacked merit (*see* paras. 10-12).

17        21.    On April 23, I received yet another version of the Third Eye portion of

18  the Joint Stipulation, along with another Sittler Declaration, from Mr. Sittler's

19  office.  A true and correct copy of the April 23 version of Third Eye's portion of the

20  Joint Stipulation and Sittler Declaration are attached hereto as Exhibit "M".  The

21  April 23 version of both Third Eye's portion of the Joint Stipulation and Sittler

22  Declaration are generally similar to that provided on April 22.  However, the April

23  23 Sittler Declaration and Joint Stipulation add an incorrect statement that UBS

24  never offered to narrow the document requests as part of the parties' meet and

25  confer efforts.  To the contrary, UBS indicated during the parties' February 12, 2014

26  in-person meet and confer session that, if Third Eye would produce anything at all,

27  UBS would consider narrowing some of the requests in a good faith effort to

28  eliminate the need for motion practice.  Third Eye never produced a single

1 | document.

2 |      22.    The Shoch declaration (this document), with the exception of

3 | paragraphs 14-22, which were added to address Third Eye's entirely new belated

4 | April 22-23 Joint Statement and the previously nonexistent Sittler Declaration, is the

5 | same as what was sent to Mr. Sittler back on March 28, 2014.

6 |      I declare under penalty of perjury that the foregoing is true and correct.

7 |

8 | DATED: May 15. 2014

9 |

10 |      By:

11 |      Louis E. Shoch

DECLARATION OF LOUIS SHOCH

# EXHIBIT "A"

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Central District of California

| | | |
|---|---|---|
| UBS Securities LLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   12 Civ. 06359 (RA) |
| Aemetis, Inc. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Southern District of New York          ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Third Eye Capital Corporation c/o Ronald K. Sittler
     2500 Broadway, Suite 125, Santa Monica, CA 90404

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place:  Louis E. Shoch, Maier Shoch LLP | Date and Time: |
|---|---|
| 1001 Hermosa Avenue, Suite 206 | |
| Hermosa Beach, CA 90254 | 12/02/2013 5:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  *11-7-13*

| *CLERK OF COURT* | |
|---|---|
| | OR    *Louis Shoch* |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   UBS Securities LLC
_____ , who issues or requests this subpoena, are:

Louis Shoch, SBN 205557, Maier Shoch LLP, 1001 Hermosa Ave., Suite 206, Hermosa Beach, CA 90254; Email: lshoch@maiershoch.com; Phone: (310) 200-9065

## SCHEDULE A

### Definitions

Unless otherwise stated, the terms set forth below are defined as follows:

1.      "Third Eye" means Third Eye Capital Corporation, and where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, and affiliates.

2.      "Aemetis" means either or both (as the context requires) of Aemetis, Inc. or Aemetis when it was known as AE Biofuels, Inc., and where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

3.      "UBS" means plaintiff UBS Securities LLC and, where applicable, UBS' representatives, agents or affiliates.

4.      "All documents" means every document, including drafts of documents and electronically stored information, within Aemetis' custody, possession or control, whether an original or copy, and every such document or writing which Third Eye can locate or discover by reasonably diligent efforts.

5.      "And/Or" shall be construed either disjunctively or conjuctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

6.      "Each" shall be construed to include the word "every," and "every" shall be construed to include the word "each." "Any" shall be construed to include the word "all," and "all" shall be construed to include the word "any." The use of the term "including" shall be construed to mean "including, but not limited to."

7.      "Concerning" means referring to, relating to, describing, evidencing, embodying, or constituting.

8.      "Communicate" or "communication" means every disclosure, transfer, exchange or transmittal of information (in the form of facts, ideas, inquiries or otherwise) whether orally or by document or whether face-to-face, by telephone, telecopier, mail, electronic mail, facsimile, personal delivery, overnight delivery or otherwise.

9.      The singular includes the plural and the plural includes the singular.  Any pronoun shall include the masculine and feminine.

10.      The use of a verb in a tense shall be construed as use of a verb in the past, present, or future tense wherever necessary to bring within the scope of each document request any documents that might otherwise be construed to be outside its scope.

### Instructions

1.      In responding to these Requests, furnish all documents in Third Eye's possession, custody, or control at the time of production, including documents in the possession, custody or control of Third Eye's current or former officers, directors, employees, agents, representatives, partners, parents, subsidiaries, affiliates, assignees or other persons acting on Third Eye's behalf.

2.      Reference to an individual, partnership, or corporation includes, in addition, all officers, directors, employees, partners, corporate parents, subsidiaries, affiliates and all other persons or entities acting on his, her or its behalf or under his, her or its control.

3.      Each paragraph herein shall be construed independently and without reference to any other paragraph for purposes of limitation.

4.      Each request for documents herein seeks production of all documents described, along with any attachments, drafts, non-identical copies and translations thereof, in Third Eye's possession, custody or control.  Any document with any marks, such as initials, comments or notations of any kind, shall not be deemed to be identical to one without such marks and shall be identified and produced as a separate document.

5.      Each page or sheet produced shall be marked with a consecutive document control number.

6.      If there are no documents responsive to any paragraph set forth in these requests, a written response so stating shall be provided.

7.      If Third Eye claims any form of privilege, whether based on statute or otherwise, as a ground for not producing any document, state the following:

(a)      the date(s) the document was created, sent and received;

(b)      the name, the present or last known home and business addresses, the telephone numbers, the title (or position) and the occupation of those individuals who prepared, produced, or reproduced, or who were recipients of, the document;

(c)      a description of the document sufficient to identify it without revealing the information for which the privilege is claimed, including the general subject matter and character of the document (e.g., letter, memorandum, notes);

(d)      the location of the document;

(e)      the custodian of the document; and

(f)     the basis on which such privilege is claimed or on which the document is otherwise withheld.

Notwithstanding the assertion of Third Eye's objection, any requested document which Third Eye objects to furnishing but which nevertheless contains non-objectionable information which is responsive to this request must be produced, but that portion of the document for which the objection is asserted may be redacted, provided that the above-requested identification is furnished.

8.     Each document requested herein is requested to be produced in its entirety without deletions or excisions regardless of whether Third Eye considers the entire document to be relevant.

9.     All documents retained in electronic form shall include all metadata and shall be produced in native format (e.g., Microsoft Outlook, Excel, and Word files), unless such native format is not readily accessible (e.g., a file format that can be accessed only by proprietary software).

10.     If any document or portion thereof that was known to exist cannot be produced because it is believed to have been destroyed, or cannot be located, or is otherwise thought to be incapable of being produced or not to exist at present, please separately identify each such document on an itemized list according to the numbered document request to which it is responsive, and set forth all available information about the document or portion thereof, including its form, subject matter, date of preparation, author(s), addressee(s), and recipient(s), and the date and reason for the document's destruction or disappearance, and, if known, the person or entity to whom the document was transferred.

11.     Each of these document requests is continuing in nature.

12.     Unless otherwise stated in a specific request, all responsive documents are to be produced that were created in, or concern, relate to, or reflect the time period from January 1, 2012 through the present.

## Documents You Are Required To Produce

1.     All documents concerning assets of Aemetis, including but not limited to bank or other accounts, receivables and/or inventory.

2.     All documents concerning or comprising and form of agreement between Aemetis and Third Eye.

3.     All documents concerning or comprising any form of communication, including but not limited to all e-mails, between Aemetis, or any representative of Aemetis, and Third Eye, or any representative of Third Eye, that refer or relate, directly or indirectly, to any or all of (i) UBS, (ii) services performed by UBS for Aemetis, (iii) payment or possible payment by Aemetis to UBS, (iv) any litigation between UBS and Aemetis, including 13-mc-80214 (CRB) (N.D. Cal.) and/or 12-cv-6359 (RA) (S.D.N.Y.), (v) the settlement in *UBS Securities LLC v. Aemetis, Inc.*, 12-cv-6359 (RA) (S.D.N.Y.), (vi) the judgment in *UBS Securities LLC v. Aemetis, Inc.*, 12-cv-6359 (RA) (S.D.N.Y.) and/or (vii) payment of the judgment in *UBS Securities LLC v. Aemetis, Inc.*, 12-cv-6359 (RA) (S.D.N.Y.).

4.     All documents concerning payments or transfers of cash or consideration from Aemetis to Third Eye during the six years prior to entry of judgment in *UBS Securities LLC v. Aemetis, Inc.*, 12-cv-6359 (RA) (S.D.N.Y.) on October 9, 2013.

5.      All documents concerning or comprising requests by Aemetis to Third Eye for permission or authorization for Aemetis to pay a third party.

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  12 Civ. 06359 (RA)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address)<br>Louis Shoch SBN 205557<br>Maier Shoch LLP<br>1001 Hermosa Ave. Suite 206<br>Hermosa Beach CA 90254<br>ATTORNEY FOR   Plaintiff | TELEPHONE NUMBER<br>3102009065<br><br>Ref. No. or File No.<br>00000-00000 | FOR COURT USE ONLY |
|---|---|---|
| UNITED STATES DISTRICT COURT - LOS ANGELES, CALIFORNIA<br>312 N Spring St<br>Los Angeles, CA 90012 | | |
| SHORT TITLE OF CASE:<br>UBS Securities LLC vs Aemetis, Inc. | | |

| INVOICE NO.<br>929039 | DATE:<br>12/02/2013 | TIME:<br>5:00 pm | DEP./DIV. | CASE NUMBER:<br>12 Civ. 06359 (RA) |
|---|---|---|---|---|

United States District Court
Declaration of Service

I, the undersigned, declare under penalty of perjury that I was on the date herein referred to over the age of 21 years and not a party to the within entitled action. I served the:

Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action;

On: Third Eye Capital Corporation

At: 2500 Broadway Suite 125
Santa Monica, CA 90404

In the above named action by delivering to and leaving with

Debbie Calderon
Whose title is: Secretary

On: 11/8/2013                    At: 10:00 AM

Fees Paid: 15.00

Person who served papers
  a. Name: Joaquin V Tinoco
  b. Address: 14748 Pipeline Avenue, Suite B, Chino Hills, CA 91709
  c. Telephone number: 909-664-9565
  d. The fee for this service was: 238.00
  e. I am:
  (3) [X] CA process server:
    (i)[X] Independent Contractor
    (ii) Registration No.: 3107
    (iii) County: Los Angeles

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the return of service and statement of fees is true and correct.

11/11/2013

Joaquin V Tinoco

Rapid Legal, Inc., San Bernardino Co. Reg. #1086, Expires 04-23-14          >   _Joaquin Tinoco_

Declaration of Service

EXHIBIT "A-1"

Business Search - Business Entities - Business Programs   4/30/14, 1:34 PM

*common good*   *privacy*   All people Liberty Speak *without discrimination*
*Conscience*

# California Secretary of State Debra Bowen

Secretary of State     Administration    Elections    **Business Programs**    Political Reform    Archives    Registries

**Business Entities (BE)**

Online Services
 - **E-File Statements of Information for Corporations**
 - **Business Search**
 - **Processing Times**
 - **Disclosure Search**

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Statements of Information** (annual/biennial reports)

**Filing Tips**

**Information Requests** (certificates, copies & status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
 - **Business Resources**
 - **Tax Information**
 - **Starting A Business**

Customer Alerts
 - **Business Identity Theft**
 - **Misleading Business Solicitations**

## Business Entity Detail

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Tuesday, March 25, 2014. Please refer to **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

| | |
|---|---|
| Entity Name: | THIRD EYE CAPITAL CORPORATION |
| Entity Number: | C3421834 |
| Date Filed: | 10/31/2011 |
| Status: | ACTIVE |
| Jurisdiction: | CANADA |
| Entity Address: | BROOKFIELD PLACE, TD CANADA TRUST TOWER, 161 BAY STREET |
| Entity City, State, Zip: | TORONTO ON CANADA M5J2S1 |
| Agent for Service of Process: | RONALD K SITTLER |
| Agent Address: | 2500 BROADWAY, SUITE125 |
| Agent City, State, Zip: | SANTA MONICA CA 90404 |

* Indicates the information is not contained in the California Secretary of State's database.

 - If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
 - For information on checking or reserving a name, refer to **Name Availability**.
 - For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
 - For help with searching an entity name, refer to **Search Tips**.
 - For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search**     **New Search**     **Printer Friendly**     **Back to Search Results**

**Privacy Statement** | **Free Document Readers**
Copyright © 2014   California Secretary of State

# EXHIBIT "B"

SITTLER LAW GROUP, PC
Ronald K. Sittler (SBN: 185853)
David P. Loughnot (SBN: 241312)
Latha R. Duncan (SBN: 289755)
11900 West Olympic Boulevard, Suite 480
Los Angeles, California  90064
Telephone:  (310) 597-4740
Facsimile:   (310) 597-4741
Email:        ron@sittlerlawgroup.com
              david@sittlerlawgroup.com
              latha@sittlerlawgroup.com

Attorneys for
**THIRD EYE CAPITAL**

# UNITED STATES DISTRICT COURT

## DISTRICT OF CALIFORNIA

| | |
|---|---|
| UBS SECURITIES LLC,<br><br>      Plaintiff,<br><br>vs.<br><br>AEMETIS, INC.,<br><br>      Defendant. | Case No.: 12 Civ. 06359 (RA)<br><br>**THIRD EYE CAPITAL'S RESPONSE TO SUBPOENA TO PRODUCE DOCUMENTS ISSUED BY UBS SECURITIES** |

PROPOUNDING PARTY:       PLAINTIFF, UBS SECURITIES LLC

RESPONDING PARTY:         THIRD EYE CAPITAL ("TEC")

SET NUMBER:                      ONE

TEC'S RESPONSE TO SUBPOENA TO PRODUCE DOCUMENTS ISSUED BY UBS SECURITIES

## GENERAL OBJECTIONS

The following objections are made to all of the requests based upon characteristics of the subpoena as a whole as opposed to the content of any of the individual requests. These objections, therefore, apply to responses to each of the requests and are hereby incorporated therein.

## GENERAL OBJECTION NO. 1:

The Subpoena is facially defective and unenforceable. California Code of Civil Procedure ("CCP") § 2020.410(c) requires that a subpoena for the production of business records be directed to the "custodian of those records or another person qualified to certify the records." For an individual to be a custodian of records, he or she must have actual possession of the records. Indeed, California Evidence Code § 1561 requires the custodian of records in receipt of a subpoena for business records to sign an affidavit authenticating the records responsive to the subpoena. No person at the address identified on the subpoena has actual possession or custody of the business records the subpoena requests, to the extent they even exist. *Ariel v. Jones*, 693 F2d 1058, 1060 (11th Cir. 1982) Rather, all of Third Eye Capital's business records are located in Ontario, Canada.

## GENERAL OBJECTION NO. 2:

Pursuant to CCP § 2020.010, only persons and documents located in California are discoverable. CCP § 2020.010(a) states that "any of the following methods may be used to obtain discovery *within the state* from a person who is not a party to the action in which discovery is sought . . . (3) a deposition for production of business records . . . ." (Emphasis added.) A subpoena cannot compel production of documents located outside California because "the courts of this state are without jurisdiction over persons or property outside of its territory." *Coopman v. Superior Court,* 237 Cal. App. 2d 656, 662 (1965).

## GENERAL OBJECTION NO. 3:

TEC objects to the Subpoena to the extent that it requires TEC to gather information that is already in the possession, custody or control of Plaintiff, seeks the disclosure of information that is readily available from public sources, or calls

for the production of documents obtainable more conveniently or with less burden or expense from some other source.

## GENERAL OBJECTION NO. 4:

TEC further objects that the federal rules require the subpoena to be served on all parties to the litigation. FRCP 45(b)(1). The Subpoena did not contain any proof of service.

## REQUEST NO. 1:

All documents concerning assets of Aemetis, including but not limited to bank or other accounts, receivables and/or inventory.

## RESPONSE TO REQUEST NO. 1:

TEC hereby incorporates all of the General Objections listed above as if stated fully herein. Furthermore, TEC objects to this request to the extent it calls for the production of attorney client privileged materials or work product. TEC objects to this request as it is overbroad and unduly burdensome in that among other things it calls for the production of electronically stored information in its native form. TEC objects on the grounds that the subpoena fails to provide adequate time to locate the documents sought. TEC objects that the documents sought would appear to be able to be obtained from the parties in lieu of burdening non-party Third Eye Capital. TEC further objects that it is principal place of business is in Toronto, Ontario, and all of the responsive documents are also in Toronto, Ontario. As a general rule, Canadian law does not permit third party discovery. Further, TEC's agent for service of process in California does not have access to the documents requested. To the extent TEC is required to produce any documents in response to the subpoena, it hereby reserves its rights to seek reimbursement for all costs and expenses involved in gathering the documents.

## REQUEST NO. 2:

All documents concerning or comprising and form of agreement between Aemetis and Third Eye.

## RESPONSE TO REQUEST NO. 2:

TEC hereby incorporates all of the General Objections listed above as if stated fully herein.  Furthermore, TEC objects to this request to the extent it calls for the production of attorney client privileged materials or work product.  TEC objects to this request as it is overbroad and unduly burdensome in that among other things it calls for the production of electronically stored information in its native form.  TEC objects on the grounds that the subpoena fails to provide adequate time to locate the documents sought.  TEC objects that the documents sought would appear to be able to be obtained from the parties in lieu of burdening non-party Third Eye Capital.  TEC further objects that it is principal place of business is in Toronto, Ontario, and all of the responsive documents are also in Toronto, Ontario.  As a general rule, Canadian law does not permit third party discovery.  Further, TEC's agent for service of process in California does not have access to the documents requested.  To the extent TEC is required to produce any documents in response to the subpoena, it hereby reserves its rights to seek reimbursement for all costs and expenses involved in gathering the documents.

## REQUEST NO. 3:

All documents concerning or comprising any form of communication, including but not limited to all e-mails, between Aemetis, or any representative of Aemetis, and Third Eye, or any representative of Third Eye, that refer or relate, directly or indirectly, to any or all of (i) UBS, (ii) services performed by UBS for Aemetis, (iii) payment or possible payment by Aemetis to UBS, (iv) any litigation between UBS and Aemetis, including 13-mc-80214 (CRB) (N.D. Cal.) and/or 12-cv-6359 (RA) (S.D.N.Y.), (v) the settlement in *UBS Securities LLC v. Aemetis, Inc.*, 12-cv-6359 (RA) (S.D.N.Y.), (vi) the judgment in *UBS Securities LLC v. Aemetis, Inc.*, 12-cv-6359 (RA) (S.D.N.Y.) and/or (vii) payment of the judgment in *UBS Securities LLC v. Aemetis, Inc.*, 12-cv-6359 (RA) (S.D.N.Y.).

TEC'S RESPONSE TO SUBPOENA TO PRODUCE DOCUMENTS ISSUED BY UBS SECURITIES

**RESPONSE TO REQUEST NO. 3:**

     TEC hereby incorporates all of the General Objections listed above as if stated fully herein.  Furthermore, TEC objects to this request to the extent it calls for the production of attorney client privileged materials or work product.  TEC objects to this request as it is overbroad and unduly burdensome in that among other things it calls for the production of electronically stored information in its native form.  TEC objects on the grounds that the subpoena fails to provide adequate time to locate the documents sought.  TEC objects that the documents sought would appear to be able to be obtained from the parties in lieu of burdening non-party Third Eye Capital.  TEC further objects that it is principal place of business is in Toronto, Ontario, and all of the responsive documents are also in Toronto, Ontario.  As a general rule, Canadian law does not permit third party discovery.  Further, TEC's agent for service of process in California does not have access to the documents requested.  To the extent TEC is required to produce any documents in response to the subpoena, it hereby reserves its rights to seek reimbursement for all costs and expenses involved in gathering the documents.

**REQUEST NO. 4:**

     All documents concerning payments or transfers of cash or consideration from Aemetis to Third Eye during the six years prior to entry of judgment in *UBS Securities v. Aemetis, Inc.*, 12-cv-6359 (RA) (S.D.N.Y.) on October 9, 2013.

**RESPONSE TO REQUEST NO. 4:**

     TEC hereby incorporates all of the General Objections listed above as if stated fully herein.  Furthermore, TEC objects to this request to the extent it calls for the production of attorney client privileged materials or work product.  TEC objects to this request as it is overbroad and unduly burdensome in that among other things it calls for the production of electronically stored information in its native form.  TEC objects on the grounds that the subpoena fails to provide

adequate time to locate the documents sought.  TEC objects that the documents sought would appear to be able to be obtained from the parties in lieu of burdening non-party Third Eye Capital.  TEC further objects that it is principal place of business is in Toronto, Ontario, and all of the responsive documents are also in Toronto, Ontario.  As a general rule, Canadian law does not permit third party discovery.  Further, TEC's agent for service of process in California does not have access to the documents requested.  To the extent TEC is required to produce any documents in response to the subpoena, it hereby reserves its rights to seek reimbursement for all costs and expenses involved in gathering the documents.

**REQUEST NO. 5:**

All documents concerning or comprising requests by Aemetis to Third Eye for permission or authorization for Aemetis to pay a third party.

**RESPONSE TO REQUEST NO. 5:**

TEC hereby incorporates all of the General Objections listed above as if stated fully herein.  Furthermore, TEC objects to this request to the extent it calls for the production of attorney client privileged materials or work product.  TEC objects to this request as it is overbroad and unduly burdensome in that among other things it calls for the production of electronically stored information in its native form.  TEC objects on the grounds that the subpoena fails to provide adequate time to locate the documents sought.  TEC objects that the documents sought would appear to be able to be obtained from the parties in lieu of burdening non-party Third Eye Capital.  TEC further objects that it is principal place of business is in Toronto, Ontario, and all of the responsive documents are also in Toronto, Ontario.  As a general rule, Canadian law does not permit third party discovery.  Further, TEC's agent for service of process in California does not have access to the documents requested.  To the extent TEC is required to produce any

TEC'S RESPONSE TO SUBPOENA TO PRODUCE DOCUMENTS ISSUED BY NDS SECURITIES

documents in response to the subpoena, it hereby reserves its rights to seek reimbursement for all costs and expenses involved in gathering the documents.

Dated:  November 29, 2013              SITTLER LAW GROUP, PC

                                       By:_____
                                                Ronald K. Sittler

                                       Attorneys for **THIRD EYE CAPITAL**

TEC'S RESPONSE TO SUBPOENA TO PRODUCE DOCUMENTS ISSUED BY UBS SECURITIES

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 11900 West Olympic Boulevard, Suite 480, Los Angeles, California 90064.

On November 25, 2013, I served the foregoing documents described as:

- **THIRD EYE CAPITAL'S RESPONSE TO SUBPOENA TO PRODUCE DOCUMENTS ISSUED BY UBS SECURITIES**

on the parties in this action by serving:

Louis E. Shoch, Esq.　　　　　　Joseph Lepera, Esq.
MAIER SHOCH LLP　　　　　　LEPERA & ASSOCIATES PC
1001 Hermosa Avenue, Suite 206　601 Montgomery Street, Suite 665
Hermosa Beach, California 90254　San Francisco, California 94111

(T)  310-200-9065 / (F)
(E)  ishoch@maiershoch.com

☒ **By Mail**: As follows: I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. Pursuant to that practice the mail is stamped with sufficient postage and then provided to the U.S. postal service on that same day in Los Angeles, California.

☐ **By Personal Service**: I caused to be delivered such envelope by hand to the offices of the addressee(s).

☐ **By Federal Express**: I caused the envelope(s) to be delivered to the Federal Express office located at 11900 West Olympic Boulevard, Suite 480, Los Angeles, California 90064, for delivery on the next-business-day basis to the offices of the addressee(s)

☐ **By Facsimile Transmission**: I caused the above named document to be transmitted by facsimile from fax number (310) 597-4741, to the offices of the addressee(s) at the facsimile number so indicated below. The transmission report was complete and without error.

TEC'S RESPONSE TO SUBPOENA TO PRODUCE DOCUMENTS ISSUED BY UBS SECURITIES

☐ **By Email Electronic Transmission**: I caused the documents to be sent to the person(s) at the email address(es). I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was incomplete or unsuccessful.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on November 29, 2013 at Los Angeles, California

                        Lauren Van Meter

TEC'S RESPONSE TO SUBPOENA TO PRODUCE DOCUMENTS ISSUED BY UBS SECURITIES

EXHIBIT "C"

# MAIER SHOCH LLP

### ATTORNEYS AT LAW

1001 Hermosa Avenue
Suite 206
Hermosa Beach, CA 90254

310.200.9065 Telephone
310.634.0361 Facsimile
LShoch@MaierShoch.com

December 16, 2013

**VIA U.S. MAIL**

Ronald Sittler, Esq.
Sittler Law Group, P.C.
11900 West Olympic Blvd., Suite 480
Los Angeles, CA 90064

Re:     *UBS Securities LLC v. Aemetis, Inc.*

Dear Mr. Sittler:

This letter follows-up on our December 11 meet and confer call regarding Third Eye Capital's Response to the subpoena issued by UBS Securities LLC on November 7, 2013. Pursuant to our discussion and in furtherance of our meet and confer efforts, I am providing the following summary of cases holding that an entity subject to a subpoena is required to produce documents found outside of the United States. As these cases demonstrate, Third Eye's objection to the production of responsive documents located in Canada is without merit, and all responsive documents must be produced forthwith.

*In re Harvard M. Jee,* 104 B.R. 289 (Bankr. C.D. Cal. 1989) concerned a subpoena served on non-party KEB in Los Angeles pursuant to Rule 45. The court did not limit the scope of documents within KEB's `control` to those documents located within the forum district. *Id.* at 294. Rather, the court held that the subpoena reached documents located outside of the forum – including documents located in Korea. *Id.* at 295 ("The fact that the documents are located in a country where their discovery would be illegal does not mean that a United States court is without the authority to compel the production of subpoenaed documents.").

In *Securities and Exchange Commission v. Minas de Artemisa, S.A.,* 150 F.2d 215 (9th Cir. 1945), which concerned a subpoena issued by the SEC to a Mexican corporation (which was served on its president in Arizona), the Ninth Circuit held that a district court may order a corporation subject to its jurisdiction to produce books and records located in Mexico. The court noted that "[c]ourts have frequently required persons within their jurisdiction to produce books

Ronald Sittler, Esq.
December 16, 2013
Page 2

and papers which were beyond the territorial limits of the court, even in cases where the documents were located in a foreign country." *Id.* at 217.

In *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16 (2d Cir. 1998), the court rejected PW-UK's argument that discovery should be limited to the discovery procedures outlined in the Hague Convention, and affirmed the district court's orders enforcing a document subpoena against PW-UK and holding PW-UK in contempt for failure to comply with the subpoena.

In light of the foregoing legal authority, please produce all documents responsive to the subpoena no later than December 27, 2013. Please feel free to contact me if you have any questions or would like to discuss this matter further. Thank you for your anticipated courtesy and cooperation.

Very truly yours,

Louis E. Shoch

# EXHIBIT "D"

# MAIER SHOCH LLP

## ATTORNEYS AT LAW

1001 Hermosa Avenue
Suite 206
Hermosa Beach, CA 90254

310.200.9065  Telephone
310.634.0361  Facsimile
LShoch@MaierShoch.com

January 8, 2014

**VIA U.S. MAIL**

Ronald Sittler, Esq.
Sittler Law Group, P.C.
11900 West Olympic Blvd., Suite 480
Los Angeles, CA 90064

Re:     *UBS Securities LLC v. Aemetis, Inc.*

Dear Mr. Sittler:

      This letter follows-up on our meet and confer call of today's date regarding Third Eye Capital's Response to the subpoena issued by UBS Securities LLC on November 7, 2013. During our call today, we agreed that Third Eye would produce responsive documents on or before January 17, 2014. I look forward to receipt of Third Eye's document production. Please feel free to contact me if you have any questions or would like to discuss this matter further. Thank you for your anticipated courtesy and cooperation.

                    Very truly yours,

                    Louis E. Shoch

# EXHIBIT "E"

Tuesday, February 11, 2014 at 11:03:56 AM Pacific Standard Time

**Subject:** TEC Subpoena
**Date:** Wednesday, January 15, 2014 at 11:13:02 PM Pacific Standard Time
**From:** Ron Sittler
**To:** LShoch@MaierShoch.com

Lou,

I wanted to follow up with you regarding TEC producing documents in this matter. After further discussions with my client, they are adamantly opposed to producing any documents. I explained your client's position, and that it might make sense to try to avoid court intervention, but they are simply unwilling to produce documents at this point. As a side note, one thing that did come up was the relevance. TEC represents a group of lenders that has lent money to Aemetis. As such, they are a secured lender, with appropriate UCCs etc. I am not sure about the precise amount of the debt, but it is far in excess of the amount of your judgment. The point being that there are no Aemetis assets in California that are not already subject to TEC's lien. As such, TEC does not really see the point in this exercise regarding attempting to find property or money that could be used to pay your client's judgment. . Please call me if you would like to further discuss. Sorry I did not get back to you sooner, but I have been preparing for a trial. Please feel free to call me with any questions. In addition to the relevance issue, we are still primarily relying on the fact that there are no documents in California, and no one in California that has control or knowledge regarding TEC's documents. I understand the prior points raised in your letter, but, I feel this point is controlling.

All the best,
Ron

RONALD K. SITTLER
SITTLER LAW GROUP | A Professional Corporation
11900 West Olympic Boulevard, Suite 480
Los Angeles, CA 90064
ron@sittlerlawgroup.com
T  310 597 4740
C  213 200 3653
F  310 597 4741

# EXHIBIT "F"

# MAIER SHOCH LLP

## ATTORNEYS AT LAW

1001 Hermosa Avenue
Suite 206
Hermosa Beach, CA 90254

310.200.9065  Telephone
310.634.0361  Facsimile
LShoch@MaierShoch.com

January 27, 2014

**VIA FACSIMILE, EMAIL, AND U.S. MAIL**

Ronald Sittler, Esq.
Sittler Law Group, P.C.
11900 West Olympic Blvd., Suite 480
Los Angeles, CA 90064

Re:     *UBS Securities LLC v. Aemetis, Inc., f/k/a AE Biofuels, Inc., 12 Civ. 6359 (RA) (AJP) (S.D.N.Y.)*

Dear Mr. Sittler:

Pursuant to U.S. District Court for the Central District of California Local Rule 37-1, I am requesting a conference on behalf of plaintiff UBS Securities LLC ("UBS") in order to eliminate the need for a hearing, or to eliminate as many of our disputes as possible, regarding the following discovery matters.

## The Subpoena

UBS obtained a judgment (the "Judgment") against Aemetis, Inc. ("Aemetis") in the amount of $2,300,000, entered in the above-referenced action in the Southern District of New York on October 9, 2013 (Dkt. No. 28).  As Aemetis refuses to pay the Judgment, UBS has been required to seek discovery of Aemetis' assets from both Aemetis and third parties, such as Third Eye Capital Corporation ("Third Eye").

On November 8, 2013, UBS served Third Eye with a subpoena *duces tecum* pursuant to Federal Rules of Civil Procedure 45 and 69, which was issued out of the Central District of California.  On November 29, 2013, Third Eye sent UBS its response (the "Response").  Despite further discussions in which you indicated that Third Eye intended to produce documents notwithstanding the objections in the Response, on January 15, 2014, you informed me by e-mail that Third Eye is "adamantly opposed to producing any documents" on the following grounds:  (1) "relevance," as Third Eye purportedly is a secured lender of Aemetis, holding an interest in debt "far in excess of the amount of [the] judgment" that plaintiff has against Aemetis; (2) the lack of responsive documents in California; and (3) the lack of anyone in California with control or

Ronald Sittler, Esq.
January 27, 2014
Page 2

knowledge regarding Third Eye's documents.  None of Third Eye's objections, either in its Response or in the January 15, 2014 e-mail, hold water, and each of UBS' requests seeks relevant documents.

A.  <u>Third Eye's General Objections Are Meritless</u>

    1.  <u>General Objection No. 1 and Third Eye's Objection Based on the Assertion that No One in California Has Control or Knowledge Regarding Third Eye's Documents</u>

Third Eye objects to the subpoena on the grounds that the subpoena was not served upon a custodian with actual possession of the relevant documents, and that no one in California has control of or knowledge regarding the responsive documents.  Rather, Third Eye asserts that all of its business records are located in Ontario, Canada.

Third Eye's contention that it should not be required to comply with the subpoena because its registered agent in California is not a custodian with actual possession of the records who may authenticate those records under California state procedures is without merit.  The subpoena was issued in federal court under the Federal Rules of Civil Procedure, not under California state procedures.

Third Eye cites *Ariel v. Jones*, 693 F.2d 1058 (11th Cir. 1982) for the proposition that because "[n]o person at the address identified on the subpoena has actual possession or custody of the business records the subpoena requests," Third Eye is not required to produce those documents.  Not only is *Ariel* distinguishable because it dealt with an organization that was required by federal law to have an agent for service of process in *every* state and that had minimal contacts with the state in which its agent was served, but the one case in the Ninth Circuit that has seriously considered the relevant holding of *Ariel* specifically rejected its interpretation of "control."  *See In re Jee*, 104 B.R. 289 (Bankr. C.D. Cal. 1989) ("This court, however, does not choose to limit the meaning of the word 'control' to only those documents located within the forum district and controlled by the entity that was physically served with the subpoena.  Instead, this court is of the opinion that such a limitation is improper in light of Federal Rules of Civil Procedure 1 and 30(b)(6)." (citation omitted)).

Here, Third Eye has registered to do business in California, and the subpoena concerns its relationship with Aemetis, a company headquartered in California.  In fact, you stated in your January 15, 2014 e-mail that Third Eye holds liens over Aemetis' assets that are *located in California*.

Ronald Sittler, Esq.
January 27, 2014
Page 3

    2.  <u>General Objection No. 2</u>

       Third Eye objects to the subpoena on the ground that the relevant documents are located outside of California.  Again, Third Eye cites California state procedures and a California state case, which are not applicable to subpoenas issued under the Federal Rules of Civil Procedure.

       It is black letter law that a federal subpoena may require a corporation subject to the court's jurisdiction to produce documents located "beyond the territorial limits of the court."[1] *Securities and Exchange Commission v. Minas de Artemisa, S.A.*, 150 F.2d 215 (9th Cir. 1945) (subpoena served on Mexican corporation's president in Arizona required production of books and papers located in Mexico); *see also In re Harvard M. Jee*, 104 B.R. 289 (Bankr. C.D. Cal. 1989) (holding that subpoena reached documents located outside of the forum, including documents located in Korea, and stating that "[t]he fact that the documents are located in a country where their discovery would be illegal does not mean that a United States court is without the authority to compel the production of subpoenaed documents"); *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16 (2d Cir. 1998) (rejecting U.K. company's argument that discovery should be consigned to the discovery procedures outlined in the Hague Convention, and affirming the district court's orders enforcing a document subpoena against the U.K. company and holding that company in contempt for failure to comply with the subpoena).  Therefore, the location of Third Eye's documents is irrelevant, and Third Eye must produce the documents responsive to the subpoena.

    3.  <u>General Objection No. 3</u>

       Third Eye objects to the subpoena to the extent that it requires Third Eye to produce information already in the possession, custody or control of UBS, or available to UBS through (a) public sources or (b) other sources who could produce the documents more conveniently or with less burden or expense.  UBS has few documents that would be responsive to any of the requests, and, while UBS is also seeking documents from Aemetis, Aemetis has not cooperated with discovery thus far, and has made only one limited post-judgment production.

    4.  <u>General Objection No. 4</u>

       Third Eye objects to the subpoena on the ground that it did not contain a proof of service.  It is UBS' position that notice to Aemetis was not required under Federal Rule Civil Procedure 69 and New York CPLR Article 52.  However, my co-counsel provided Aemetis with notice and a copy of the subpoena by Federal Express on November 26, 2013.

---

[1] Third Eye has not asserted that it is not subject to personal jurisdiction in the United States District Court for the Central District of California.

Ronald Sittler, Esq.
January 27, 2014
Page 4


B. <u>All of the Documents Sought by the Subpoena are Relevant</u>

In your January 15, 2014 e-mail, you state that Third Eye is withholding documents
because:

"TEC represents a group of lenders that has lent money to Aemetis. As such, they
are a secured lender, with appropriate UCCs etc. I am not sure about the precise
amount of the debt, but it is far in excess of the amount of your judgment. The
point being that there are no Aemetis assets in California that are not already
subject to TEC's lien. As such, TEC does not really see the point in this exercise
regarding attempting to find property or money that could be used to pay your
client's judgment."

For the purposes of discovery, it is immaterial whether Third Eye believes that Aemetis'
assets in California could be used to satisfy the Judgment. Rule 69 affords judgment creditors
such as UBS broad post-judgment discovery from any person, and permits discovery which may
uncover assets of the judgment debtor or otherwise aid in the enforcement of the judgment. *See,
e.g., United States v. Warren*, 99 Civ. 814, 2011 U.S. Dist. LEXIS 83314 (E.D. Cal. Jul. 29, 2011)
("Generally, the scope of post-judgment discovery is broad. '[T]he judgment creditor must be
given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment
debtor.'" (citations and quotation marks omitted)); *NML Capital Ltd. v. Republic of Argentina*,
No. C 12-80185, 2012 U.S. Dist. LEXIS 149661 (N.D. Cal. Oct. 17, 2012) (stating that "[b]road
post-judgment discovery in aid of execution is the norm in federal courts" and denying motion to
quash subpoena issued against third-party which sought discovery of judgment debtor's assets).
Each of UBS' requests seeks documents from Third Eye that would aid UBS in enforcing the
Judgment by identifying, *inter alia*, Aemetis' assets, Third Eye's purported security interest over
Aemetis' assets, and Third Eye's exercise of control over Aemetis' assets, including over
Aemetis' non-payment of the Judgment.[2]

Not only is Third Eye's relevance objection baseless, as it is clear that UBS is entitled
to discovery as to Aemetis' assets regardless of whether Third Eye believes that such assets will
eventually be collectible, but Third Eye's claim that Aemetis' assets in California cannot be used
to pay the Judgment is *completely* unsubstantiated. Even if Third Eye is not required to produce
all of the documents responsive to the subpoena, it is ludicrous to assert that it does not need to at
least produce all documents evidencing its security interest in Aemetis, the assets of Aemetis on
which it claims to have this interest, and how, if at all, Third Eye has interfered with Aemetis'
payment of the Judgment.

_____

[2] *See* Doc. Request No. 1 (documents concerning assets of Aemetis); Doc. Request No. 2 (documents concerning
agreements between Aemetis and Third Eye); Doc. Request No. 3 (documents concerning communications between
Aemetis and Third Eye regarding UBS or the Judgment); Doc. Request No. 4 (documents concerning payments or
transfers of cash from Aemetis to Third Eye during the six years prior to the entry of the Judgment); Doc. Request
No. 5 (documents concerning requests by Aemetis to Third Eye for permission or authorization for Aemetis to pay
any third party, including UBS).

Ronald Sittler, Esq.
January 27, 2014
Page 5

<u>Conclusion</u>

Pursuant to Local Rule 37-1, please be advised that we are required to conduct our conference in my office no later than ten days from today's date. I am available to meet on the following three dates at the times indicated:

1. January 31, 2014 anytime between 10:00 a.m. and 4:00 p.m.
2. February 3, 2014 anytime between 10:00 a.m. and 4:00 p.m.
3. February 6, 2014 anytime between 10:00 a.m. and 4:00 p.m.

Since your client's foregoing objections are set forth in written responses, which you signed in accordance with Rule 11(a) of the Federal Rules of Civil Procedure, I will presume they "are warranted by existing law" or constitute "nonfrivolous arguments" and you are already, or will be, fully prepared to engage in a meaningful discussion of the legal points and authorities for your client's objections and our aforementioned contentions at our conference.

I will call you tomorrow to confirm your receipt of this letter and set a date and time for our discovery conference. If none of the foregoing dates and times are convenient, please be prepared to give me at least three alternative dates and times that are convenient to you.

If you are not in or available to speak when I call, and I do not hear from you by 5:00 p.m. on January 29 with alternative dates, I will assume you will be available to meet on the third proposed date at 10:00 a.m. as set forth above; the last available meeting date. Accordingly, a non-appearance on the last proposed date will be construed as a refusal to comply with Local Rule 37-1, after which my client will bring the motion to compel without the benefit of a joint stipulation. A copy of this letter will be attached as Exhibit A to my declaration of non-cooperation accompanying the motion. A request for other forms of appropriate relief under Local Rules 37-4, 27, F.R.C.P. 37, and 28 U.S.C. § 1927 will also be made.

Please do not hesitate to call if you have any questions or comments. Meanwhile, I hope to hear from you before 5:00 p.m. on Wednesday, January 29.

Very truly yours,

Louis Shoch

Louis Shoch

Ronald Sittler, Esq.
January 27, 2014
Page 6


Cc:     Joseph A. Lepera, Esq., counsel for Aemetis, Inc. (via e-mail)

        Charles R. Jacob III, Esq. (via e-mail)

# EXHIBIT "G"

**Subject:** RE: UBS v. Aemetis: Third Eye Subpoena
**Date:** Wednesday, February 26, 2014 at 4:37:45 PM Pacific Standard Time
**From:** Ron Sittler
**To:** Louis Shoch

Louis,

Hey, thanks again for the meeting. I appreciate you setting up the meet and confer. If you have a moment, could you pass on to me the contact information for your Lexis representative? I would greatly appreciate it.

I have spoken with TEC and they would like me to continue to assert the objections. I understand the points you made at the meet and confer. But, from my reading of the case law, the fact that TEC has no actual presence in the state of California (beyond being qualified to do business here) ultimately decides the issue. There is no one to depose in California, there are no documents in California etc. The cases you cited were different in my opinion. While the courts in those cases ordered deponents to produce documents in California from other states and even other countries, in each of the cases, there was some initial presence here in California. That is not the case here. For instance, I understand you are only looking to obtain documents, but what if you also wanted to take a PMK deposition? Would someone have to travel here? That can't be the correct result.

I am happy to work with you with respect to scheduling a motion if you feel it is necessary.

Again, it was very nice meeting with you. Please feel free to contact me for any follow up.

All the best,
Ron

RONALD K. SITTLER
SITTLER LAW GROUP | A Professional Corporation
11900 West Olympic Boulevard, Suite 480
Los Angeles, CA 90064
ron@sittlerlawgroup.com
T 310 597 4740
C 213 200 3653
F 310 597 4741

**From:** Louis Shoch [mailto:LShoch@MaierShoch.com]
**Sent:** Tuesday, February 25, 2014 10:49 AM
**To:** Ron Sittler
**Subject:** Re: UBS v. Aemetis: Third Eye Subpoena

Hi Ron,

This follows-up on my email below and the message I left with your assistant a few moments ago.  Please contact me immediately.  If Third Eye is going to stand on the one remaining objection, we need to start the motion to compel joint stipulation process.  In the alternative, please provide the responsive documents.  Thank you.

-Lou

**From:** Louis Shoch <LShoch@MaierShoch.com>
**Date:** Thursday, February 20, 2014 at 4:31 PM
**To:** Ron Sittler <ron@sittlerlawgroup.com>
**Subject:** UBS v. Aemetis: Third Eye Subpoena

Hi Ron,

During our in-person meet and confer session on February 12, you stated that you would provide a final answer to me regarding whether your client was going to produce documents or stand on its one remaining objection by no later than February 18.  I have not heard from you.  Please let me know your client's position by no later than close of business tomorrow, February 21.  Thank you.

-Lou

EXHIBIT "H"

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

———————

# FORM 10-K

———————

☑☐ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2013
Commission file number: 000-51354

# AEMETIS, INC.

*(Exact name of registrant as specified in its charter)*

| | |
|---|---|
| **Nevada** | **26-1407544** |
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification Number)* |

**20400 Stevens Creek Blvd., Suite 700**
**Cupertino, CA 95014**
*(Address of principal executive offices)*

Registrant's telephone number (including area code): **(408) 213-0940**

Securities registered under Section 12(g) of the Exchange Act:

**Common Stock, Par Value $0.001**
(Title of class)

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☐   No ☑

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐   No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or Section 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes ☑   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§229.405 of this chapter) is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. Yes ☐   No ☑

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting

## Item 12.  Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters

The following table sets forth information as of March [6], 2014, regarding the beneficial ownership of each class of our voting stock, including (a) each stockholder who is known by the Company to own beneficially in excess of 5% of each class of our voting stock; (b) each director; (c) the Company's named executive officers; and (d) the Company's named executive officers and directors as a group.  Except as otherwise indicated, all persons listed below have (i) sole voting power and investment power with respect to their shares of stock, except to the extent that authority is shared by spouses under applicable law, and (ii) record and beneficial ownership with respect to their shares of stock.  The percentage of beneficial ownership of common stock is based upon 200,057,246 shares of common stock outstanding as of February 28, 2014. The percentage of beneficial ownership of Series B preferred stock is based upon 2,381,061 shares of Series B preferred stock outstanding as of February 28, 2014. Unless otherwise identified, the address of the directors and officers of the Company is 20400 Stevens Creek Blvd., Suite 700, Cupertino, CA 95014.

| Name and Address | Common Stock | | Series B Preferred Stock | |
|---|---|---|---|---|
| | Amount and Nature of Beneficial Ownership | Percentage of Class | Amount and Nature of Beneficial Ownership | Percentage of Class |
| **Officers & Directors** | | | | |
| Eric A. McAfee [1] | 34,916,159 | 17.45% | | |
| Francis Barton [2] | 633,333 | * | | |
| John R. Block [3] | 783,333 | * | | |
| Dr. Steven Hutcheson [4] | 2,303,403 | 1.15% | | |
| Harold Sorgenti [5] | 833,333 | * | | |
| Andrew Foster [6] | 1,155,000 | * | | |
| Sanjeev Gupta [7] | 1,525,000 | * | | |
| Todd A. Waltz [8] | 2,665,000 | 1.32 % % | | |
| **All officers and directors as a group (8 Persons)** | 44,614,561 | 21.69 | | |
| **5% or more Holders** | | | | |
| Third Eye Capital [9] 161 Bay Street, Suite 3930 Toronto, Ontario M5J 2S1 | 34,981,566 | 17.45% | | |
| Laird Cagan [10] 20400 Stevens Creek Blvd., Suite 700 Cupertino, CA 95014 | 24,648,872 | 12.32% | | |
| Michael Orsak 1125 San Mateo Drive, Menlo Park, California 94025 | 2,178,333 | | 166,667 | 6.94% |
| David J. Lies 1210 Sheridan Road Wilmette, Illinois 60091 | 1,606,587 | | 200,000 | 8.33% |
| Mahesh Pawani Villa No. 6, Street 29, Community 317, Al Mankhool, Dubai, United Arab Emirates | 535,358 | | 400,000 | 16.66% |

EXHIBIT "I"

Page 1

1

2    UNITED STATES DISTRICT COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    ------------------------------------------x

5    UBS SECURITIES,

6                              Judgment Creditor,

7              - against -

8    AEMETIS, INC. F/K/A AE BIOFUELS, INC.,

9                              Judgement Debtor.

10   ------------------------------------------x

11                              March 27, 2014

                                9:35   a.m.

12

13              DEPOSITION of ERIC A. McAFEE,

14   taken by the Plaintiff, pursuant to

15   Notice, held at the offices of Miller &

16   Wrubel, 570 Lexington Avenue, New York,

17   New York, before Debbie Zaromatidis, a

18   Shorthand Reporter and Notary Public of

19   the State of New York.

20

21

22

23

24

25

Page 2

1

2  A P P E A R A N C E S :

3

4      MILLER & WRUBEL, P.C.

5      Attorneys for Plaintiff

6           570 Lexington Avenue

7           New York, New York

8   BY:   CHARLES R. JACOB, ESQ.

9

10

11      CRONE KLINE RINDE, ESQS.

12      Attorneys for Defendant

13           5 East 57th Street, 18th floor

14           New York, New York 1022

15   BY:   MARK E. CRONE, ESQ.

16           CLAIRE WOO, ESQ.

17

18

19

20

21

22

23

24

25

Page 3

1                          McAfee

2        E R I C   M C A F E E,

3        called as a witness, having been first

4        duly affirmed, was examined and testified

5        as follows:

6        EXAMINATION BY MR. JACOB:

7             Q.      Good morning, Mr. McAfee, my

8        name is Charles Jacob, and I'll be asking

9        you questions here today.

10                    Do you understand that your

11       testimony is under penalty of perjury?

12            A.      Yes.

13            Q.      If at any time today you don't

14       understand my question, please ask me to

15       clarify.

16                    Let me show you what has been

17       previously marked as McGladrey Exhibit 15.

18                    (Document handed to witness.)

19            Q.      Have you ever seen this document

20       before?

21            A.      I don't believe so.

22            Q.      How are you employed?

23            A.      Clarify, please.

24            Q.      What is your current employment

25       status?

Page 4

1                          McAfee

2        A.      I have employment with a

3    Aemetis, Inc., McAfee Capital LLC, and

4    probably some other entities I can't

5    remember.

6        Q.      What is your position with

7    Aemetis, Inc.?

8        A.      Chairman, chief executive

9    officer, and I think I am president and

10   chief executive of several of the

11   subsidiaries.

12       Q.      Looking at what has been

13   previously marked as McGladrey Exhibit 18,

14   do you understand that there is a federal

15   court judgment in the amount of 2.3

16   million dollars against Aemetis, Inc.?

17       A.      I knew of it separate from this

18   document.    I am not sure what exactly

19   this document is, but I am aware of the

20   judgment, yes.

21       Q.      Has there been any discussion

22   within Aemetis, Inc. that you are aware of

23   concerning paying the federal court

24   judgment against Aemetis, Inc.?

25       A.      There have been discussions

Page 25

1                    McAfee

2   holder over all the funds of Ametis, but

3   we believe we will be able to convince

4   Third Eye Capital to pay 50,000 dollars a

5   month to UBS under a signed and delivered

6   settlement agreement.

7        Q.    DOES Aemetis need Third Eye

8   Capital's approval to pay any amount to

9   UBS?

10       A.    Yes.

11       Q.    Who is your contact person at

12  Third Eye Capital with respect to Aemetis'

13  discussions of paying UBS?

14       A.    Arif Bhalwani.

15       Q.    When was your most recent

16  discussion with Mr. Bhalwani about the

17  possibility of Aemetis paying UBS?

18       A.    Probably a month ago.

19       Q.    Tell me what you recall of that

20  discussion.

21       A.    I proposed that we offer a

22  payment of 50,000 dollars per month.

23  Third Eye Capital restated their position

24  that no amount was due to junior creditors

25  as long as the roughly 70 million dollars

Page 39

1                    McAfee

2    financial reporting were not effective

3    during the period."

4            Do you know what that sentence

5    is referring to?

6        A.    Yes.

7        Q.    Please describe that for me.

8        A.    We recently extended our

9    accounting staff and the auditors felt

10   that this disclosure was not appropriate

11   until another quarter or two had passed by

12   until the new staff was fully integrated

13   into our process.

14       Q.    Is it correct that Third Eye

15   Capital is based in Toronto?

16       A.    That's correct.

17       Q.    Does Third Eye Capital to your

18   knowledge have investors in funds that

19   place debt?

20       A.    It has investors in funds.

21   Third Eye Capital places the debt.

22       Q.    Is Third Eye Capital a

23   shareholder of Aemetis, Inc.?

24       A.    Yes.

25       Q.    Is it the largest shareholder of

Page 40

1              McAfee
2    Aemetis, Inc.?
3         A.     If -- I don't think so, but they
4    -- they might be by a few shares.
5         Q.     Do they solicit investors  --
6    does Third Eye Capital solicit investors
7    through North America -- throughout North
8    America?
9         A.     No.
10        Q.     Do you have any understanding as
11   to where they solicit their investors?
12        A.     Canada.
13        Q.     For how long has Aemetis been
14   doing business with Third Eye Capital?
15        A.     Since May of 2008 when we closed
16   our first financing.
17        Q.     Let me ask you to look at page
18   14, if you would of the 10-K.  Again, that
19   is a split page.  I am going to ask you
20   about the third paragraph on the first
21   page, which begins with the sentence, "We
22   conduct substantially all of our
23   operations through subsidiaries and are
24   dependent on dividends or other
25   intercompany transfers of funds from our

Page 62

1                    McAfee
2            C E R T I F I C A T I O N
3
4
5
6        I, DEBBIE ZAROMATIDIS, a Shorthand
7    Reporter and a Notary Public, do hereby
8    certify that the foregoing witness, ERIC
9    McAFEE, was duly sworn on the date
10    indicated, and that the foregoing is a
11    true and accurate transcription of my
12    stenographic notes.
13        I further certify that I am not
14    employed by nor related to any party to
15    this action.
16
17
18
19
20
21
22
23                DEBBIE ZAROMATIDIS
24
25

# EXHIBIT "J"



# Sent on behalf of Ron Sittler - Third Eye Capital's Portion/Responses for the Joint Stipulation

**Lauren** <lauren@sittlerlawgroup.com>
To: Louis Shoch <LShoch@maiershoch.com>                    Thu, Apr 10, 2014 at 5:42 PM
Cc: Ron Sittler <ron@sittlerlawgroup.com>, David Loughnot <david@sittlerlawgroup.com>

Mr. Shoch,


At Ron's request, I have attached Third Eye Capital's portion to be included in the joint stipulation.   We would like to see the final version of the stipulation before it is submitted.


Thank you!


Lauren Van Meter

Assistant to Ron Sittler

SITTLER LAW GROUP  |  A Professional Corporation

11900 West Olympic Boulevard, Suite 480
Los Angeles, California  90064

E:  lauren@sittlerlawgroup.com

T:  310-597-4740

F:  310-597-4741


**ATTENTION:** This e-mail contains **PRIVILEGED** and **CONFIDENTIAL INFORMATION** intended only for the use of the individual(s) named above.  If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering this to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited.  If you have received this e-mail in error, please immediately notify me by e-mail at lauren@sittlerlawgroup.com and destroy the original message and any copies.  All rights reserved.


**2014-04-10 Stipulation (UBS v. Aemetis).docx**
49K

1      In 2006 Third Eye Capital, as the administrative agent for Sprott Private Client Trust

2  and TEC Credit Opportunities Fund – Insight, (both non-US entities, hereinafter "TEC") made

3  a secured loan to the predecessor of Aemetis, judgment debtor in the underlying action.  UBS

4  claims to have obtained a judgment against Aemetis and is now seeking to take discovery

5  from TEC, a non-party to the underlying litigation.  The subpoena seeks to impose upon Third

6  Eye the obligation to produce documents in California despite the fact that TEC has no office

7  in California, no employees in California and no documents in California.  Other than being

8  "qualified" to do business in California, and making a secured loan to Aemetis, Third Eye

9  Capital has no other on-going business in California.  As a requirement of being qualified to

10  transact business in California, TEC identified Ronald Sittler from Sittler Law Group as its agent

11  for service of process.  UBS filed this ancillary action in the Central District of California and

12  served Mr. Sittler with a subpoena seeking the production of documents that UBS claims will

13  assist it in its attempts to collect its judgment.

14      The subpoena should be quashed as improper.  TEC does not maintain an office in

15  California.  TEC has no employees in California.  Finally, none of the requested documents

16  are in California.  The cases cited by UBS primarily relate to situations where an entity with

17  operations in California claims that it is unable to produce certain documents because the

18  documents are located in another jurisdiction or subject to the laws of another jurisdiction.  In

19  those cases, the Court's have found that an entity with an employee in California and conducting

20  business in California should be able to produce the underlying documents in California.  For

21  example, UBS relies on Jee v. Hanil Bank Ltd., 104 B.R. 289 (C.D. Calif. 1989).  In Jee, the

22  court analyzed whether or not Korean Exchange Bank ("KEB") had actual control over the

23  relevant documents sought for production.  Id. at 294.  In making this determination, the Court

24  relied on Moore' Federal Practice Sec. 45.05[2] at 45-29, stating:

25      The force of a subpoena for production of documentary evidence generally

26      reaches all documents under the control of the person or corporation ordered to

27      produce . . . . It makes no difference that a particular document is kept at  a place

28

1    beyond the territorial jurisdiction of the court that issues the subpoena.  The test is
2    one of control, not of location.  Id. (citing Moore's Federal Practice).
3            In the case at bar, Mr. Sittler has no control over the underlying documents.  In fact,
4    he has never seen the documents and was unaware of their existence prior to receiving the
5    subpoena.  He should not be compelled to produce TEC's documents.
6            Even if the subpoena was proper, its requests are overly broad and burdensome such that
7    their production would significantly burden TEC.  Given the significant procedures and remedies
8    available to an entity looking to enforce a judgment in California, it would be inappropriate to
9    burden a small entity such as TEC with the requirements of having to respond to the subpoena
10   in a foreign state.   It would appear that UBS could obtain almost all if not all of the information
11   it from Aemetis, the actual judgment debtor.  Aemetis is a publicly traded company with its
12   principle place of business in California.  UBS should be able to collect the information it needs
13   from Aemetis in lieu of the broad requests it has served.  The first request seeks the production
14   of "all documents concerning assets of Aemetis."   It would seem that every document in TEC's
15   possession relating to its loan to Aemetis "concerns" an asset of Aemetis.  Also, UBS seeks "all
16   documents concerning payments or transfers of cash from Aemetis" to TEC for a period of 6
17   years. This would encompass each and every advance ever made under the loan between TEC
18   and Aemetis.   First, it is hard to imagine how advances made six years ago from a bank to its
19   borrower could be relevant six years later in identifying assets.  Further, the amount of time and
20   effort to produce these documents would be extensive.  TEC has approximately 13 employees.  It
21   would take a team of employees to attempt to track down all of these documents.  The subpoena
22   should be quashed.
23           Finally, it should be noted that while these assertions lack relevance, and were not part
24   of the parties meet and confer, UBS has asserted in its portion of the stipulation that TEC is a
25   "shareholder" of Aemetis.  Even if true, this is not relevant to the issues at bar.  Further, it is
26   very common for certain types of lenders to obtain warrants or equity in addition to the normal
27   collateral that is used to secure a significant commercial loan.
28

1    **RESPONSE TO DOCUMENT REQUEST NO. 1:**

2         TEC asserts that the lack of documents in California coupled with TEC's lack of presence

3    in California requires the subpoena to be quashed.  TEC's agent in California is not in possession

4    of any documents responsive to this request.  Further, this request is overly broad in that it seeks

5    the production of "all documents concerning assets of Aemetis."  Most likely, all documents

6    in TEC's possession relating to its loan to Aemetis could be responsive to this request.  TEC is

7    a Canadian entity formed pursuant to the laws of Ontario, Canada with its principal and only

8    place of business in Toronto, Canada.  Having to review and produce all of these documents in

9    California would be a substantial hardship for TEC.

10   **RESPONSE TO DOCUMENT REQUEST NO. 2:**

11        TEC asserts that the lack of documents in California coupled with TEC's lack of presence

12   in California requires the subpoena to be quashed.  TEC's agent in California is not in possession

13   of any documents responsive to this request.  To force TEC to provide copies of the relevant

14   loan agreement and all amendments thereto when there is no doubt that this information could be

15   obtained from Aemetis without burdening third party TEC is inappropriate.

16   **RESPONSE TO DOCUMENT REQUEST NO. 3:**

17        This request seeks the production of documents relating to the underlying litigation.  The

18   case has been resolved, and this subpoena is being served under the "guise" of attempting to

19   find assets to aid in the collection of debt.  There is no reason for TEC to have to go through

20   its emails, documents and correspondence files in an attempt to find information relating to

21   litigation that has been completed.  Again, all of this information would be available to Aemetis.

22   **RESPONSE TO DOCUMENT REQUEST NO. 4:**

23        This request would require TEC to search for documentation of each and every advance,

24   payment or debit throughout a six year history of the loan.  The work to do this would be

25   extremely time consuming and could potentially cripple a small company like TEC.

26   **RESPONSE TO DOCUMENT REQUEST NO. 5:**

27        This request does not seek information relating to assets of Aemetis.

28

JOINT STIPULATION ON UBS MOTION TO COMPEL THIRD EYE CAPITAL
TO PRODUCE DOCUMENTS

EXHIBIT "K"

Case 2:14-cv-03997-FMO-MAN   Document 2   Filed 05/23/14   Page 65 of 87   Page ID #:66



## Sent on behalf of Ron Sittler - Third Eye Capital's Portion/Responses for the Joint Stipulation

**Ron Sittler** <ron@sittlerlawgroup.com>
To: Lauren <lauren@sittlerlawgroup.com>, Louis Shoch <LShoch@maiershoch.com>
Cc: David Loughnot <david@sittlerlawgroup.com>

Thu, Apr 10, 2014 at 6:32 PM

Louis,

Could I please look at the brief one last time before you file it?  You have some typos in your portion ---- I am happy to point them out to you.  One of them is repeated.

Also, it is my understanding that we will each get a chance to file a single 5 page brief after the stipulation is filed.  Is that your understanding also?

Thanks

Ron

RONALD K. SITTLER

SITTLER LAW GROUP  |  A Professional Corporation

ron@sittlerlawgroup.com

T  310 597 4740

C  213 200 3653

EXHIBIT "L"



# Sent on behalf of Ron Sittler - Stipulation and Declaration

**Lauren** <lauren@sittlerlawgroup.com>
To: Louis Shoch <LShoch@maiershoch.com>
Cc: Ron Sittler <ron@sittlerlawgroup.com>

Tue, Apr 22, 2014 at 6:57 PM

Mr. Shoch,


At Ron's request, I am forwarding the attached files to you to be included in the joint stipulation.


Thank you,


Lauren Van Meter

Assistant to Ron Sittler

SITTLER LAW GROUP | A Professional Corporation

11900 West Olympic Boulevard, Suite 480
Los Angeles, California  90064

E:  lauren@sittlerlawgroup.com

T:  310-597-4740

F:  310-597-4741

**ATTENTION:** This e-mail contains **PRIVILEGED** and **CONFIDENTIAL INFORMATION** intended only for the use of the individual(s) named above.  If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering this to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited.  If you have received this e-mail in error, please immediately notify me by e-mail at lauren@sittlerlawgroup.com and destroy the original message and any copies.  All rights reserved.

**2 attachments**

**2014-04-22 Stipulation (UBS v. Aemetis).docx**
51K

**2014-04-22 R. Sittler Declaration re Stipulation (UBS v. Aemetis).docx**
40K

1    The subpoena is improper and should be quashed.  While Third Eye Capital,

2    ("TEC") is authorized to conduct business in California, it has no presence in California, no

3    employees in California and no documents in California.  Forcing TEC to comply with the

4    subpoena would punish a company for qualifying to do business in California.  All of the

5    relevant information sought by UBS could be obtained from the judgment debtor, Aemetis.

6    There is no legal authority to permit UBS to harass TEC, a foreign entity and third party, to

7    search for and produce the reams of information it is inappropriately seeking.  Further, the

8    requests are over broad.  Post judgment discovery should be limited to identifying assets or

9    information about assets that could be used to satisfy the judgment.  A careful review of UBS'

10   requests evidence that the requests are not drafted to elicit information regarding satisfaction of

11   the Judgment.  Instead, it appears that UBS is either on a fishing expedition or hopeful that by

12   harassing Aemetis' senior lender it will result in the satisfaction of the Judgment.  Either way,

13   the subpoena is inappropriate and TEC should not be burdened with this timeconsuming,

14   expensive and pointless exercise.

15       In 2006 TEC, as the administrative agent for Sprott Private Client Trust ("Sprott") and

16   TEC Credit Opportunities Fund – Insight ("Insight") made a secured loan to the predecessor

17   of Aemetis.  (Insight and Sprott shall hereinafter be referred to as the "Lenders.")  Pursuant

18   to separate agreements, TEC operates as the administrative agent for the Lenders.  Over the

19   following 8 years, the original secured loan evolved into a series of loans ("Credit Agreements").

20   The Credit Agreements relate to loans that have been provided to Aemetis on varying terms, in

21   varying amounts with varying credit enhancements.  Currently, the total amount due under the

22   various obligations exceeds $50 Million.[1]  Many of the Credit Agreements have been amended,

23   restated and modified over the last 8 years.

24       TEC has no office in California, no employees in California and no documents in

25   California.  Other than being "qualified" to do business in California, and providing the

26   financing described herein, TEC has no on-going business in California.  As a requirement of

27   _____

28   [1]  Declaration of Ronald K. Sittler, ("Sittler Decl.") para. ___.

1   being qualified to transact business in California, TEC appointed an agent for service of process,

2   Ronald Sittler.  After obtaining the Judgment in New York, UBS filed this ancillary action in

3   California and served Mr. Sittler in the apparent hopes it would be able to take advantage of the

4   fact that TEC is qualified to do business in California.

5        The cases cited by UBS relate to situations where an entity with business operations in

6   California asserts that it is unable to produce documents because the documents are located in

7   another jurisdiction or subject to the laws of another jurisdiction.  For instance, UBS relies on

8   Jee v. Hanil Bank Ltd., 104 B.R. 289 (C.D. Calif. 1989).  In Jee, the court analyzed whether

9   or not Korean Exchange Bank ("KEB") had actual control over relevant documents sought

10  for production.  Id. at 294.  In making this determination, the Court relied on Moore' Federal

11  Practice Sec. 45.05[2] at 45-29, stating:

12         The force of a subpoena for production of documentary evidence generally

13         reaches all documents under the control of the person or corporation ordered to

14         produce . . . . It makes no difference that a particular document is kept at a place

15         beyond the territorial jurisdiction of the court that issues the subpoena.  The test is

16         one of control, not of location.  Id. (citing Moore's Federal Practice).

17       In the case at bar, TEC's agent for service of process has no control over the underlying

18  documents.  In fact, he has never seen the documents and has no information regarding the

19  existence or non-existence of the documents.   He would have no ability to authenticate the

20  documents.

21       UBS's portion of the stipulation mis-states the parties' meet and confer efforts.  While

22  the meet and confer efforts and dialogue were substantial, at no time did TEC represent that it

23  would be producing responsive documents.  Furthermore, it is not correct that counsel for TEC

24  "agreed" that any of TEC's objections lacked merit.[2]  Through counsel, the parties participated

25  in a spirited debate about the relevant case law.  But, the parties were unable to resolve their

26  differences.  TEC has never waived any of its objections.

27  _____

[2] Sittler Decl., para. ___.

28

1    UBS asserts herein that TEC is a "substantial shareholder" of Aemetis. During the

2    extensive meet and confer efforts between the parties, UBS never raised this point. This is

3    no doubt due to the fact that this accusation is irrelevant to the issues before the Court. This

4    accusation provides light regarding UBS' true intentions with respect to the subpoena. UBS

5    loosely implies that TEC is exerting influence over Aemetis to refrain from satisfying the

6    Judgment. There is no factual basis to support these accusations. Further, post-judgment

7    discovery is an inappropriate means to conduct a fishing expedition with respect to such baseless

8    accusations. Alternatively, it would appear that it is the intention of UBS to harass Aemetis'

9    senior secured creditor in the hopes that such action will result in satisfaction of UBS' judgment.

10   This strategy is inappropriate and will not prove successful.

11       Finally, even if the subpoena was proper, its requests are overly broad and burdensome

12   and the production would significantly burden third party TEC. While limited in number, the

13   requests are open ended to say the least. The first request seeks the production of "all documents

14   concerning assets of Aemetis."  It would seem possible that almost every document regarding

15   Aemetis in TEC's possession "concerns" an asset of Aemetis. Given the complex lending

16   relationship between TEC and Aemetis, TEC possesses a significant amount of due diligence

17   and information relating to Aemetis and "assets" belonging to Aemetis.  This is the security

18   for the loans made by TEC.  Trying to identify documents responsive to such a broad request

19   would be time-consuming and burdensome. Also, UBS seeks "all documents concerning

20   payments or transfers of cash from Aemetis" to TEC for a period of 6 years.  In addition to being

21   overly broad, this request exemplifies the inappropriate purpose of the subpoena.  This would

22   encompass each and every advance ever made under the Credit Agreements.  Further, there is

23   no basis to produce information relating to advances made by TEC 5 years prior to the entry of

24   the Judgment.  It is impossible to imagine how such information could help UBS identify assets

25   currently available to satisfy a judgment.  To the contrary, this would appear to be a fishing

26   expedition searching for documents to support an accusation that TEC is controlling Aemetis or

27   its financial decisions.

28

1    The amount of time and effort to produce these documents would be extensive.  TEC

2   has approximately 13 employees.  It would take a dedicated team of employees to attempt to

3   track down all of these documents.  Given the significant procedures and remedies available

4   to an entity looking to enforce a judgment in California, it would be inappropriate to burden a

5   small foreign entity such as TEC with the requirements of having to produce documents in the

6   possession of the judgment debtor, Aemetis.  The subpoena should be quashed.

7

8   <u>**RESPONSE TO DOCUMENT REQUEST NO. 1:**</u>

9    This request is overly broad in that it seeks the production of "all documents concerning

10   assets of Aemetis."  Most likely, all documents in TEC's possession relating to its loan to

11   Aemetis could be responsive to this request.  The loan is secured by asserts of Aemetis.

12   Information about revenues of Aemetis "concern assets of Aemetis."  TEC is a Canadian entity

13   formed pursuant to the laws of Ontario, Canada with its principal and only place of business in

14   Toronto, Canada.  Having to review and produce all of these documents in California would be a

15   substantial hardship for TEC.  As with all of UBS' requests, this request is drafted to be as broad

16   as possible, with no attempt to focus on assets that could be used to satisfy the Judgment, or

17   identify hidden assets.

18   <u>**RESPONSE TO DOCUMENT REQUEST NO. 2:**</u>

19    This request is not directed to the production of information likely to lead to the

20   discovery of assets available to satisfy the Judgment.  The Credit Agreements are substantial and

21   span the better part of 8 years.  The production of loan agreements, modifications, amendments

22   and restatements from six, seven or eight years earlier will not aid UBS in their alleged attempt

23   to identify assets available to satisfy a Judgment in 2014.  This request is not drafted in a way to

24   limit the substantial time and burden that would be imposed on TEC if it has to search for and

25   produce these documents.  Further, there is no doubt that the relevant information is in the hands

26   of Aemetis, the judgment debtor.

27   <u>**RESPONSE TO DOCUMENT REQUEST NO. 3:**</u>

28

1    This request seeks the production of documents relating to the underlying litigation. The
2    case is over. The Judgment has been awarded to UBS. It is impossible to imagine a legitimate
3    purpose behind the production of documents discussing concluded litigation. There is no reason
4    for TEC to go through its emails, documents and correspondence files in an attempt to find
5    information relating to litigation that has been completed.

6    **RESPONSE TO DOCUMENT REQUEST NO. 4:**

7    This request would require TEC to search for documentation of each and every advance,
8    payment or debit throughout a six year history of the Credit Agreements. The work to do this
9    would be extremely time-consuming and could potentially cripple a small company like TEC.
10   Further, it is impossible to fathom how funds advanced 8 years earlier by Aemetis' lender could
11   lead to the discovery of assets today. Clearly, UBS has a different agenda here. A sophisticated
12   institution such as UBS is well aware that advances made under a loan agreement six years prior
13   to entry of the Judgment are not going to lead to the production of relevant information. To
14   the contrary, it appears UBS is trying to obtain this information for an inappropriate or ulterior
15   motive. This is inappropriate and should not be permitted.

16   **RESPONSE TO DOCUMENT REQUEST NO. 5:**

17   This request does not seek information relating to assets of Aemetis. Like the other
18   requests, this request signifies UBS' true intention, which is to conduct some type of a fishing
19   expedition to assert the baseless argument that TEC is exercising authority over Aemetis.
20   For argument's sake, were one to assume that correspondence of this nature existed, this
21   correspondence would not provide any insight with respect to assets available to the Judgment.
22   This request, like the others, should be seen for what it really is, an impressible fishing
23   expedition brought to burden an important an important business partner of Aemetis.

24                               **CONCLUSION**

25   For the reasons stated above, TEC and the Lenders should be relieved from having to
26   produce documents responsive to the subpoena.

27

28
                                    -5-

## DECLARATION OF RONALD K. SITTLER

I, RONALD K. SITTLER, declare as follows:

1.     I am an attorney at law duly licensed to practice before the courts of the State of California and I am a partner at the law firm of Sittler Law Group, a Professional Corporation, counsel of record for Plaintiffs.  I have personal knowledge of the matters set forth herein and such matters are true and correct and I could and would competently testify thereto if called upon to do so.

2.     I have reviewed the declaration of Mr. Shoch.  While there was a great deal of back and forth between the parties in an effort to avoid motion practice, at no point did Sprott Private Client Trust and TEC Credit Opportunities Fund – Insight, (both non-US entities, hereinafter "TEC") agree to produce documents and then retract that agreement.  I may have said that I would discuss with TEC the idea of making a small production, in an effort to avoid discovery motions, but at no point did I represent on behalf of TEC that TEC would be producing the documents sought in the subpoena.

3.     I participated in a meet and confer session with counsel for UBS, Louis Shoch, as described in his declaration.  At no point did I state that TEC's objections lack merit given the case law provided by UBS.  I do recall attempting to quickly get to the point of the disagreement with Mr. Shoch during the meet and confer.  I explained to Mr. Shoch that despite all of the case law cited by UBS, there was still no authority on point with the facts at bar.  The primary fact that I was alluding to is that TEC has no documents, employees or presence in California.  I further noted that all of the cases relied on by UBS are based on facts wherein the party being subpoenaed had operations and/or employees in the relevant jurisdiction.  That is not the case here.  TEC is qualified to do business in California.  In essence, if a Court was to order TEC to produce the documents, it would amount to a sanction against TEC for qualifying to do business in

California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on this _____ day of April, 2014, at Los Angeles, California.


_____
RONALD K. SITTLER

DECLARATION OF RONALD K. SITTLER

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 11900 West Olympic Boulevard, Suite 480, Los Angeles, California 90064.

On April 21, 2013, I served the foregoing documents described as:

- **DECLARATION OF RONALD K. SITTLER RE**

on the parties in this action by serving:

Louis E. Shoch, Esq.
MAIER SHOCH LLP
1001 Hermosa Avenue, Suite 206
Hermosa Beach, California 90254

Joseph Lepera, Esq.
LEPERA & ASSOCIATES PC
601 Montgomery Street, Suite 665
San Francisco, California 94111

(T) 310-200-9065 / (F)
(E) ishoch@maiershoch.com

☒ **By Mail**: As follows: I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. Pursuant to that practice the mail is stamped with sufficient postage and then provided to the U.S. postal service on that same day in Los Angeles, California.

**By Personal Service**: I caused to be delivered such envelope by hand to the offices of the addressee(s).

**By Federal Express**: I caused the envelope(s) to be delivered to the Federal Express office located at 11900 West Olympic Boulevard, Suite 480, Los Angeles, California 90064, for delivery on the next-business-day basis to the offices of the addressee(s)

**By Facsimile Transmission**: I caused the above named document to be transmitted by facsimile from fax number (310) 597-4741, to the offices of the addressee(s) at the facsimile number so indicated below. The transmission report was complete and without error.

**By Email Electronic Transmission**:  I caused the documents to be sent to the person(s) at the email address(es).  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was incomplete or unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on April 21, 2014 at Los Angeles, California

Lauren Van Meter

DECLARATION OF RONALD K. SITTLER

# EXHIBIT "M"



## FW: Stipulation and RKS Declaration (UBS v. Aemetis)

**Ron Sittler** <ron@sittlerlawgroup.com>                                      Wed, Apr 23, 2014 at 6:23 PM
To: Lou Shoch <lou@maiershoch.com>
Cc: Lauren <lauren@sittlerlawgroup.com>

Louis,
This is in response to your email from this morning.  Attached are TEC's final
version of the stipulation and my declaration that goes with the stipulation.
There were slight changes in this brief v. the one you received last week.  The
changes relate almost entirely to the description of the credits (loans) and
properly describing them.  There are no new legal arguments.  I did note in my
declaration that I did not (at least in my opinion) agree during our meet and
confer that all of our objections were without merit with the exception of our main
argument regarding TEC's presence in California.  I do recall stating at the meet
and confer that we should focus on that point, and that the other objections were
not our main focus.  I am not sure this really matters, but I wanted to clear this
up.


You have my permission to file this ---- let me know if you need me to sign a final
copy.



All the best,

Ron



RONALD K. SITTLER

SITTLER LAW GROUP | A Professional Corporation

1    The subpoena is improper and should be quashed. Third Eye Capital, ("TEC") is

2    authorized to conduct business in California. But, it has no presence in California, no employees

3    in California and no documents in California. Forcing TEC to comply with the subpoena would

4    in essence punish a company for qualifying to do business in California. Further, all of the

5    relevant information sought by UBS could be obtained from the judgment debtor, Aemetis.

6    Further, the requests are overly broad. Post judgment discovery should be limited to identifying

7    assets or information that could be used to satisfy a judgment. A quick review of UBS' requests

8    evidence that they are not drafted to elicit information regarding satisfaction of the Judgment.

9    To the contrary, it appears that (a) UBS is on a fishing expedition or (b) UBS is hopeful that its

10   harassment of a significant business partner of the judgment debtor will lead to satisfaction of the

11   Judgment. Either way, the subpoena is inappropriate and third party TEC, a foreign entity with

12   its only office in Toronto, Ontario should not be burdened with this time-consuming, expensive

13   and pointless exercise.

14       In 2006 TEC, as the administrative agent for Sprott PC Trust ("Sprott") and TEC Credit

15   Opportunities Fund – Insight ("Insight") made a secured loan to the predecessor of Aemetis.

16   (Insight and Sprott shall hereinafter be referred to as the "Lenders.") TEC is the administrative

17   agent for the Lenders. Over the ensuing 8 years, the original secured loan was repaid and a

18   series of separate secured loans was made to Aemetis or subsidiaries of Aemetis ("Note Purchase

19   Agreements"). Currently, the total amount due under the multiple loans exceeds $50 Million.

20   Many of the Note Purchase Agreements have been amended, restated and modified over the last

21   8 years.

22       TEC has no office in California, no employees in California and no documents in

23   California. Other than being "qualified" to do business in California, and providing the

24   financing described herein, TEC has no on-going business in California. As part of being

25   qualified to transact business in California, TEC appointed an agent for service of process.

26   After obtaining the Judgment in New York, UBS filed this ancillary action in California and

27   served TEC's agent for service of process in the apparent hopes it would be able to take

28

-1-

JOINT STIPULATION ON UBS MOTION TO COMPEL THIRD EYE CAPITAL
TO PRODUCE DOCUMENTS

1  advantage of the fact that TEC is qualified to do business in California to force TEC to produce

2  documents in California to aid in the collection of a judgment issued in New York.

3       The cases cited by UBS relate to situations where an entity with business operations in

4  California asserts that it is unable to produce documents because (a) the documents are located in

5  another jurisdiction; (b) the documents are not in the custody or control of the entities local

6  employees; or, (c) the documents are housed in a jurisdiction that does not permit their

7  production.  For instance, UBS relies on Jee v. Hanil Bank Ltd., 104 B.R. 289 (C.D. Calif. 1989).

8  In Jee, the court analyzed whether or not Korean Exchange Bank ("KEB") had actual control

9  over relevant documents sought for production.  Id. at 294.  In making this determination, the

10 Court relied on Moore' Federal Practice Sec. 45.05[2] at 45-29, stating:

11       The force of a subpoena for production of documentary evidence generally

12       reaches all documents under the control of the person or corporation ordered to

13       produce . . . . It makes no difference that a particular document is kept at a place

14       beyond the territorial jurisdiction of the court that issues the subpoena.  The test is

15       one of control, not of location.  Id. (citing Moore's Federal Practice (2013

16       Edition).

17       In the case at bar, TEC's agent for service of process has no control over any documents

18 responsive to the subpoena.  In fact, he has never seen the documents and has no information

19 regarding the existence or non-existence of the documents with the exception of the limited

20 information that has been provided herein.   TEC's agent for service of process would have no

21 ability to authenticate, or comment upon the documents or the completeness of the production.

22       UBS's portion of the stipulation mis-states the parties' meet and confer efforts.  While

23 the meet and confer efforts and dialogue were substantial, at no time did TEC represent that it

24 would be producing responsive documents.[1]  Furthermore, it is not correct that counsel for TEC

25 "agreed" that any of TEC's objections lacked merit.[2]  Through counsel, the parties participated in

26

27 [1] Declaration of Ronald K. Sittler ("Sittler Decl."), para. 2
   [2] Sittler Decl., para. 3.

28

1    a spirited debate about the relevant case law.  But, the parties were unable to resolve their

2    differences.  TEC has never waived any of its objections.[3]

3          UBS asserts herein that TEC is a "substantial shareholder" of Aemetis.  During the

4    extensive meet and confer efforts between the parties, UBS never raised this point.  This is no

5    doubt due to the fact that this accusation is irrelevant to the issues before the Court.  This

6    accusation provides light regarding UBS' true intentions with respect to the subpoena.  UBS

7    loosely implies that TEC is exerting influence over Aemetis to refrain from satisfying the

8    Judgment.  There is no factual basis to support these accusations.  Further, post-judgment

9    discovery is an inappropriate means to conduct a fishing expedition with respect to such baseless

10   accusations.  Alternatively, it would appear that it is the intention of UBS to harass Aemetis'

11   senior secured creditor in the hopes that such action will result in satisfaction of UBS' judgment.

12   This strategy is inappropriate and will not prove successful.

13         Finally, even if the subpoena was proper, its requests are overly broad and burdensome

14   and the production would significantly burden third party TEC.  During the meet and confer

15   process, counsel for UBS refused to limit the breadth of the requests.[4]  While limited in number,

16   the requests are open ended to say the least.  The first request seeks the production of "all

17   documents concerning assets of Aemetis."   It would seem possible that almost every document

18   regarding Aemetis in TEC's possession "concerns" an asset of Aemetis.  Given the complex

19   lending relationship between TEC and Aemetis, TEC possesses a significant amount of due

20   diligence and information relating to Aemetis and "assets" belonging to Aemetis.  This is the

21   security for the loans made by TEC.  Trying to identify documents responsive to such a broad

22   request would be time-consuming and burdensome.  Also, UBS seeks "all documents concerning

23   payments or transfers of cash from Aemetis" to TEC for a period of 6 years.  In addition to being

24   overly broad, this request exemplifies the inappropriate purpose of the subpoena.  This would

25   encompass each and every advance ever made under the Credit Agreements.  Further, there is no

26

27   [3] Sittler Decl., para. 2.

     [4] Sittler Decl., para. 4.
28

-3-

1  basis to produce information relating to advances made by TEC 5 years prior to the entry of the

2  Judgment.  It is impossible to imagine how such information could help UBS identify assets

3  currently available to satisfy a judgment.  To the contrary, this would appear to be a fishing

4  expedition searching for documents to support an accusation that TEC is controlling Aemetis or

5  its financial decisions.

6          The amount of time and effort to produce these documents would be extensive.  TEC has

7  approximately 13 employees.  It would take a dedicated team of employees to attempt to track

8  down all of these documents.  Given the significant procedures and remedies available to an

9  entity looking to enforce a judgment in California, it would be inappropriate to burden a small

10 foreign entity such as TEC with the requirements of having to produce documents in the

11 possession of the judgment debtor, Aemetis.  The subpoena should be quashed.

12

13 **RESPONSE TO DOCUMENT REQUEST NO. 1:**

14         This request is overly broad in that it seeks the production of "all documents concerning

15 assets of Aemetis."  Most likely, all documents in TEC's possession relating to its loan to

16 Aemetis could be responsive to this request.  The loan is secured by asserts of Aemetis.

17 Information about revenues of Aemetis "concern assets of Aemetis."  TEC is a Canadian entity

18 formed pursuant to the laws of Ontario, Canada with its principal and only place of business in

19 Toronto, Canada.  Having to review and produce all of these documents in California would be a

20 substantial hardship for TEC.  As with all of UBS' requests, this request is drafted to be as broad

21 as possible, with no attempt to focus on assets that could be used to satisfy the Judgment, or

22 identify hidden assets.

23 **RESPONSE TO DOCUMENT REQUEST NO. 2:**

24         This request is not directed to the production of information likely to lead to the

25 discovery of assets available to satisfy the Judgment.  The Note Purchase Agreements are

26 substantial and span 8 years.  The production of loan agreements, modifications, amendments

27 and restatements from six, seven or eight years earlier will not aid UBS to obtain information

28

JOINT STIPULATION ON UBS MOTION TO COMPEL THIRD EYE CAPITAL
TO PRODUCE DOCUMENTS

1    about that will lead to satisfaction of the Judgment. This request is not drafted in a way to limit

2    the substantial time and burden that would be imposed on TEC if it has to search for and produce

3    these documents. Further, there is no doubt that the relevant information is in the hands of

4    Aemetis, the judgment debtor.

5    **RESPONSE TO DOCUMENT REQUEST NO. 3:**

6        This request seeks the production of documents relating to the underlying litigation. The

7    case is over. The Judgment has been awarded to UBS. It is impossible to imagine a legitimate

8    purpose behind the production of documents discussing concluded litigation. There is no reason

9    for TEC to go through its emails, documents and correspondence files in an attempt to find

10    information relating to litigation that has been completed.

11    **RESPONSE TO DOCUMENT REQUEST NO. 4:**

12        This request would require TEC to search for documentation of each and every advance,

13    payment or debit throughout a six year history of the Credit Agreements. The work to do this

14    would be extremely time-consuming and could potentially cripple a small company like TEC.

15    Further, it is impossible to fathom how funds advanced 8 years earlier by Aemetis' lender could

16    lead to the discovery of assets today. Clearly, UBS has a different agenda here. A sophisticated

17    institution such as UBS is well aware that advances made under a loan agreement six years prior

18    to entry of the Judgment are not going to lead to the production of relevant information. To the

19    contrary, it appears UBS is trying to obtain this information for an inappropriate or ulterior

20    motive. This is inappropriate and should not be permitted.

21    **RESPONSE TO DOCUMENT REQUEST NO. 5:**

22        This request does not seek information relating to assets of Aemetis. Like the other

23    requests, this request signifies UBS' true intention, which is to conduct some type of a fishing

24    expedition to assert the baseless argument that TEC is exercising authority over Aemetis. For

25    argument's sake, were one to assume that correspondence of this nature existed, this

26    correspondence would not provide any insight with respect to assets available to the Judgment.

27

28

1   This request, like the others, should be seen for what it really is, an impressible fishing

2   expedition brought to burden an important an important business partner of Aemetis.

3                                         **CONCLUSION**

4          For the reasons stated above, TEC and the Lenders should be relieved from having to

5   produce documents responsive to the subpoena.

JOINT STIPULATION ON UBS MOTION TO COMPEL THIRD EYE CAPITAL
TO PRODUCE DOCUMENTS

## DECLARATION OF RONALD K. SITTLER

I, RONALD K. SITTLER, declare as follows:

1.      I am an attorney at law duly licensed to practice before the courts of the State of California and I am president of  Sittler Law Group, a Professional Corporation, counsel for Third Eye Capital ("TEC") as agent for Sprott PC Trust ("Sprott") and TEC Credit Opportunities Fund – Insight ("Insight").  (Sprott and Insight shall hereinafter be referred to as the "Lenders").  I have personal knowledge of the matters set forth herein accept where stated otherwise and such matters are true and correct and I could and would competently testify thereto if called upon to do so.

2.      I have reviewed the declaration of Mr. Shoch.  While there was a great deal of back and forth between the parties in an effort to avoid motion practice, at no point did TEC agree to produce documents and then retract that agreement.  I may have said that I would discuss with TEC the idea of making a small production as part of the meet and confer process in an effort to avoid discovery motions, but at no point did I represent on behalf of TEC that TEC had waived its objections and would be producing documents.

3.      I participated in a meet and confer session with counsel for UBS, Louis Shoch, as described in his declaration.  At no point did I state that TEC's objections lack merit given the case law provided by UBS.  I do recall attempting to quickly get to the point of the disagreement with Mr. Shoch during the meet and confer.  I explained to Mr. Shoch that despite all of the case law cited by UBS, there was still no authority on point with TEC's main contention that TEC has no presence in California.  I further noted that all of the cases relied on by UBS are based on facts wherein the party being subpoenaed had operations and/or employees in the relevant jurisdiction.  That is not the case here.  TEC is qualified to do business in California and I have been appointed as its agent for service of

process, but, I have no control or knowledge regarding the documents sought by the subpoena.

       4.    I requested that UBS narrow the requests as they seem very broad.  Mr. Shoch informed me that UBS was unwilling to do this.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on this 23rd day of April, 2014, at Los Angeles, California.


                                  RONALD K. SITTLER