COPY

2014 MAY 23  PM 3:56

1  MAIER SHOCH LLP
   ERIC R. MAIER, SBN 182808
2     emaier@maiershoch.com
   LOUIS E. SHOCH, SBN 205557
3     lshoch@maiershoch.com
   1001 Hermosa Ave., Suite 206
4  Hermosa Beach, CA 90254
   Telephone:   (310) 200-9065
5  Facsimile:   (310) 634-0361

6  Attorneys for
   UBS Securities LLC
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11

12  UBS SECURITIES LLC,                  CASE NO.: CV14-03997-FMO(MANx)

13              Movant,

14       v.

15  THIRD EYE CAPITAL               JOINT STIPULATION ON MOTION OF
    CORPORATION,                    UBS SECURITIES LLC TO COMPEL
16                                  THIRD EYE CAPITAL TO PRODUCE
                Respondent.         DOCUMENTS IN RESPONSE TO
17                                  SUBPOENA DUCES TECUM

18

19                                  Hearing Date:
                                    Hearing Time:
20                                  Hearing Place:

21

22

23

24

25

26

27

28

Maier Shoch LLP

Pursuant to Local Rule 37-2, moving party UBS Securities LLC ("UBS") and respondent Third Eye Capital Corporation ("Third Eye"), by and through their respective counsel, hereby submit this Joint Stipulation regarding UBS' motion to compel production of documents in response to subpoena *duces tecum*.

## I.   UBS SECURITIES LLC'S INTRODUCTION

On October 9, 2013, UBS obtained a $2,300,000 judgment (the "Judgment") against Aemetis, Inc. ("Aemetis") in *UBS Securities LLC v. Aemetis, Inc.,* Southern District of New York, Case No. Civ. 6359 (RA)(AJP) (S.D.N.Y.) (Dkt. No. 28). Aemetis has refused to pay the Judgment, so UBS must seek discovery concerning Aemetis' assets from Aemetis, and from third parties with relevant information concerning Aemetis' assets.  These third parties include Third Eye, which is both an asset-based lender and a substantial shareholder of Aemetis.  Declaration of Louis Shoch ("Shoch Decl.") ¶¶14-15, Exhs. H and I.

Third Eye has registered with the California Secretary of State to do business in California and has engaged, and is engaging, in very substantial business here – tens of millions of dollars in secured lending, with Third Eye's numerous UCC filings also registered with the state of California.  Thus, Third Eye has purposefully availed itself of California law so as to engage in substantial business in California, including business with Aemetis directly related to UBS' efforts to enforce its judgment. Third Eye actually controls whether Aemetis will pay all or any part of the Judgment.  Shoch Decl. ¶15, Exh. I (Aemetis' CEO, E. McAfee Depo.: "Q: Does Aemetis need Third Eye Capital's approval to pay any amount to UBS?  A: Yes.") .

On November 8, 2013, UBS served Third Eye with a subpoena *duces tecum*.[1] Shoch Decl. ¶2, Exh. A.  The subpoena contained five document requests.  The document requests sought (1) documents concerning assets of Aemetis; (2) documents

---

[1] Third Eye's registered agent for service of process in California is Ron Sittler, Esq., the same attorney representing Third Eye in connection with this dispute.  Shoch Decl. ¶2, Exh.A-1.

Maier Shoch LLP

1

JOINT STIPULATION ON MOTION OF UBS SECURITIES LLC TO COMPEL THIRD EYE CAPITAL TO PRODUCE
DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM

concerning agreements between Aemetis and Third Eye; (3) documents concerning communications between Aemetis and Third Eye regarding UBS or the judgment; (4) documents concerning payments or transfers of cash from Aemetis to Third Eye during the six years prior to the entry of the Judgment; and (5) documents concerning requests by Aemetis to Third Eye for permission or authorization for Aemetis to pay any third party, including UBS.  On November 29, 2013, Third Eye served its responses to the subpoena (the "Response"), asserting the exact same canned objections to each of the five document requests and refusing to produce any documents.  Shoch Decl. ¶3, Exh. B.  The primary basis for Third Eye's refusal to produce responsive documents was the assertion that the documents are located in Canada.  As support for this objection, Third Eye cited California state law--an inapposite California state court case and the California Code of Civil Procedure.  Shoch Decl. ¶3, Exh. B.

After telephonic discussions and meet-and confer correspondence, Third Eye's counsel agreed on January 8 that Third Eye would produce documents notwithstanding the objections in the Response.  Shoch Decl. ¶¶4-7, Exh. D.  However, on January 15, counsel for Third Eye retracted his prior agreement, emailing that Third Eye is "adamantly opposed to producing any documents" on the following grounds:  (1) "relevance," as Third Eye purportedly is a secured lender of Aemetis, holding an interest in debt "far in excess of the amount of [the] judgment" that plaintiff has against Aemetis; (2) the lack of responsive documents in California; and (3) the lack of anyone in California with control or knowledge regarding Third Eye's documents. Shoch Decl. ¶8, Exh. E.  In the January 15, 2014 e-mail, Third Eye stated:

///

///

///

///

///

///

Maier Shoch LLP

2

JOINT STIPULATION ON MOTION OF UBS SECURITIES LLC TO COMPEL THIRD EYE CAPITAL TO PRODUCE
DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM

> TEC represents a group of lenders that has lent money to Aemetis. As such, they are a secured lender, with appropriate UCCs etc. I am not sure about the precise amount of the debt, but it is far in excess of the amount of your judgment. The point being that there are no Aemetis assets in California that are not already subject to TEC's lien. As such, TEC does not really see the point in this exercise regarding attempting to find property or money that could be used to pay your client's judgment.[2]

On January 27, 2014, counsel for UBS sent a letter to Third Eye's counsel pursuant to Local Rule 37-1 that detailed UBS' position, provided supporting legal authority, and requested an in-person meet and confer session. Shoch Decl. ¶9, Exh. F. Counsel for the parties met and conferred in-person on February 12, 2014. Shoch Decl. ¶10. During the in-person meet and confer session, counsel for Third Eye agreed that all of the objections raised by Third Eye, with the exception of the "no one in California has control of the documents" objection, did not withstand scrutiny in light of the case law provided by UBS. Shoch Decl. ¶10. Third Eye's counsel stated that he would speak with his client and determine whether Third Eye would stand on the one remaining objection regarding "control over the documents" or produce documents.[3] Shoch Decl. ¶10. After repeated follow-up by UBS' counsel, Third Eye confirmed in an email dated February 26 that it would not produce any documents, on the ground

---

[2] Of course, for the purposes of discovery, it is immaterial whether Third Eye believes that Aemetis' assets in California could be used to satisfy the Judgment. Third Eye's statement actually provides support for UBS' position that the documents requested are relevant, discoverable, and must be produced.

[3] Third Eye's portion of the Joint Stipulation and the Sittler Declaration now accuse UBS of "mis-stating" the parties meet and confer efforts. As set forth in greater detail in the Shoch Declaration (*see* paras. 16-22), Third Eye's belated characterization is false and, tellingly, was not raised by Third Eye in its original April 10 Joint Stipulation submission (which contained no declaration). It was not until April 22-23, when Third Eye was supposed to take one final look at the Joint Stipulation to correct any typographical or minor errors, that Third Eye submitted an entirely new Joint Stipulation and the Sittler Declaration, completely rewritten, raising a host of new arguments (equally unavailing), and for the first time stating that UBS' portion of the Joint Statement and the Shoch Declaration were purportedly inaccurate on a number of points regarding the parties' meet and confer efforts. Shoch Decl. ¶¶16-22, Exhs. J-M. Under Local Rule 37-2.2, Third Eye's April 22-23 portions of the Joint Stipulation and Sittler Declaration are untimely and should not be considered. Regardless, Third Eye's failure to in any way question the Shoch Declaration in its April 10 submission speaks volumes regarding the veracity of the belated Sittler Declaration and Third Eye's subsequent representations.

3

Maier Shoch LLP

JOINT STIPULATION ON MOTION OF UBS SECURITIES LLC TO COMPEL THIRD EYE CAPITAL TO PRODUCE DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM

1  that Third Eye "has no actual presence in California," "there are no documents in

2  California" and that although courts in other cases "ordered deponents to produce

3  documents in California from other states and even other countries, in each of the

4  cases, there was some initial presence here in California." Shoch Decl. ¶¶11-13, Exh.

5  G.  This motion followed.

6

7  ## II.   THIRD EYE CAPITAL'S INTRODUCTION

8          The subpoena is improper and should be quashed.  Third Eye Capital, ("TEC")

9  is authorized to conduct business in California.  But, it has no presence in California,

10  no employees in California and no documents in California.  Forcing TEC to comply

11  with the subpoena would in essence punish a company for qualifying to do business in

12  California.  Further, all of the relevant information sought by UBS could be obtained

13  from the judgment debtor, Aemetis.  Further, the requests are overly broad.  Post

14  judgment discovery should be limited to identifying assets or information that could be

15  used to satisfy a judgment.  A quick review of UBS' requests evidence that they are

16  not drafted to elicit information regarding satisfaction of the Judgment.  To the

17  contrary, it appears that (a) UBS is on a fishing expedition or (b) UBS is hopeful that

18  its harassment of a significant business partner of the judgment debtor will lead to

19  satisfaction of the Judgment.  Either way, the subpoena is inappropriate and third party

20  TEC, a foreign entity with its only office in Toronto, Ontario should not be burdened

21  with this time-consuming, expensive and pointless exercise.

22          In 2006 TEC, as the administrative agent for Sprott PC Trust ("Sprott") and

23  TEC Credit Opportunities Fund – Insight ("Insight") made a secured loan to the

24  predecessor of Aemetis.  (Insight and Sprott shall hereinafter be referred to as the

25  "Lenders.")  TEC is the administrative agent for the Lenders.  Over the ensuing 8

26  years, the original secured loan was repaid and a series of separate secured loans was

27  made to Aemetis or subsidiaries of Aemetis ("Note Purchase Agreements").

28  Currently, the total amount due under the multiple loans exceeds $50 Million.  Many

Maier Shoch LLP

4

JOINT STIPULATION ON MOTION OF UBS SECURITIES LLC TO COMPEL THIRD EYE CAPITAL TO PRODUCE
DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM

1   of the Note Purchase Agreements have been amended, restated and modified over the

2   last 8 years.

3         TEC has no office in California, no employees in California and no documents

4   in California.  Other than being "qualified" to do business in California, and providing

5   the financing described herein, TEC has no on-going business in California.  As part of

6   being qualified to transact business in California, TEC appointed an agent for service

7   of process.  After obtaining the Judgment in New York, UBS filed this ancillary action

8   in California and served TEC's agent for service of process in the apparent hopes it

9   would be able to take advantage of the fact that TEC is qualified to do business in

10  California to force TEC to produce documents in California to aid in the collection of a

11  judgment issued in New York.

12        The cases cited by UBS relate to situations where an entity with business

13  operations in California asserts that it is unable to produce documents because (a) the

14  documents are located in another jurisdiction; (b) the documents are not in the custody

15  or control of the entities local employees; or, (c) the documents are housed in a

16  jurisdiction that does not permit their production.  For instance, UBS relies on Jee v.

17  Hanil Bank Ltd., 104 B.R. 289 (C.D. Calif. 1989).  In Jee, the court analyzed whether

18  or not Korean Exchange Bank ("KEB") had actual control over relevant documents

19  sought for production.  Id. at 294.  In making this determination, the Court relied on

20  Moore' Federal Practice Sec. 45.05[2] at 45-29, stating:

21              The force of a subpoena for production of documentary evidence
            generally reaches all documents under the control of the person or
22              corporation ordered to produce . . . . It makes no difference that a
            particular document is kept at a place beyond the territorial jurisdiction of
23              the court that issues the subpoena.  The test is one of control, not of
            location.  Id. (citing Moore's Federal Practice (2013 Edition).
24

25        In the case at bar, TEC's agent for service of process has no control over any

26  documents responsive to the subpoena.  In fact, he has never seen the documents and

27  has no information regarding the existence or non-existence of the documents with the

28  exception of the limited information that has been provided herein.  TEC's agent for

Maier Shoch LLP

5

JOINT STIPULATION ON MOTION OF UBS SECURITIES LLC TO COMPEL THIRD EYE CAPITAL TO PRODUCE
DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM

1    service of process would have no ability to authenticate, or comment upon the

2    documents or the completeness of the production.

3         UBS's portion of the stipulation mis-states the parties' meet and confer efforts.

4    While the meet and confer efforts and dialogue were substantial, at no time did TEC

5    represent that it would be producing responsive documents.[4]  Furthermore, it is not

6    correct that counsel for TEC "agreed" that any of TEC's objections lacked merit.[5]

7    Through counsel, the parties participated in a spirited debate about the relevant case

8    law.  But, the parties were unable to resolve their differences.  TEC has never waived

9    any of its objections.[6]

10        UBS asserts herein that TEC is a "substantial shareholder" of Aemetis.  During

11   the extensive meet and confer efforts between the parties, UBS never raised this point.

12   This is no doubt due to the fact that this accusation is irrelevant to the issues before the

13   Court.  This accusation provides light regarding UBS' true intentions with respect to

14   the subpoena.  UBS loosely implies that TEC is exerting influence over Aemetis to

15   refrain from satisfying the Judgment.  There is no factual basis to support these

16   accusations.  Further, post-judgment discovery is an inappropriate means to conduct a

17   fishing expedition with respect to such baseless accusations.  Alternatively, it would

18   appear that it is the intention of UBS to harass Aemetis' senior secured creditor in the

19   hopes that such action will result in satisfaction of UBS' judgment.  This strategy is

20   inappropriate and will not prove successful.

21        Finally, even if the subpoena was proper, its requests are overly broad and

22   burdensome and the production would significantly burden third party TEC.  During

23   the meet and confer process, counsel for UBS refused to limit the breadth of the

24

25   _____

26   [4] Declaration of Ronald K. Sittler ("Sittler Decl."), para. 2

27   [5] Sittler Decl., para. 3.

28   [6] Sittler Decl., para. 2.

Maier Shoch LLP

1    requests.[7]  While limited in number, the requests are open ended to say the least.  The

2    first request seeks the production of "all documents concerning assets of Aemetis."   It

3    would seem possible that almost every document regarding Aemetis in TEC's

4    possession "concerns" an asset of Aemetis.  Given the complex lending relationship

5    between TEC and Aemetis, TEC possesses a significant amount of due diligence and

6    information relating to Aemetis and "assets" belonging to Aemetis.   This is the

7    security for the loans made by TEC.  Trying to identify documents responsive to such

8    a broad request would be time-consuming and burdensome.  Also, UBS seeks "all

9    documents concerning payments or transfers of cash from Aemetis" to TEC for a

10   period of 6 years.  In addition to being overly broad, this request exemplifies the

11   inappropriate purpose of the subpoena.  This would encompass each and every

12   advance ever made under the Credit Agreements.  Further, there is no basis to produce

13   information relating to advances made by TEC 5 years prior to the entry of the

14   Judgment.  It is impossible to imagine how such information could help UBS identify

15   assets currently available to satisfy a judgment.  To the contrary, this would appear to

16   be a fishing expedition searching for documents to support an accusation that TEC is

17   controlling Aemetis or its financial decisions.

18          The amount of time and effort to produce these documents would be extensive.

19   TEC has approximately 13 employees.  It would take a dedicated team of employees to

20   attempt to track down all of these documents.  Given the significant procedures and

21   remedies available to an entity looking to enforce a judgment in California, it would be

22   inappropriate to burden a small foreign entity such as TEC with the requirements of

23   having to produce documents in the possession of the judgment debtor, Aemetis.  The

24   subpoena should be quashed.

25

26

27
     _____

28   [7] Sittler Decl., para. 4.

Maier Shoch LLP

7

JOINT STIPULATION ON MOTION OF UBS SECURITIES LLC TO COMPEL THIRD EYE CAPITAL TO PRODUCE
DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM

## III.   THE DOCUMENT REQUESTS AT ISSUE

As noted above, UBS served Third Eye with a subpoena *duces tecum* containing five document requests.  Third Eye asserted the exact same objections to each request and refused to produce a single document.

### UBS Document Request No. 1:

All documents concerning assets of Aemetis, including but not limited to bank or other accounts, receivables and/or inventory.

### Third Eye's Response to Document Request No. 1:

TEC hereby incorporates all of the General Objections listed above as if stated fully herein.  Furthermore, TEC objects to this request to the extent it calls for the production of attorney client privileged materials or work product.  TEC objects to this request as it is overbroad and unduly burdensome in that among other things it calls for the production of electronically stored information in its native form.  TEC objects on the grounds that the subpoena fails to provide adequate time to locate the documents sought.  TEC objects that the documents sought would appear to be able to be obtained from the parties in lieu of burdening non-party Third Eye Capital.  TEC further objects that it is principal place of business in in Toronto, Ontario, and all of the responsive documents are also in Toronto, Ontario.  As a general rule, Canadian law does not permit third party discovery.  Further, TEC's agent for service of process in California does not have access to the documents requested.  To the extent TEC is required to produce any documents in response to the subpoena, it hereby reserves its rights to seek reimbursement for all costs and expenses involved in gathering the documents.

### UBS' Contentions:

Rule 69 affords judgment creditors such as UBS broad post-judgment discovery

Maier Shoch LLP

JOINT STIPULATION ON MOTION OF UBS SECURITIES LLC TO COMPEL THIRD EYE CAPITAL TO PRODUCE
DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM

1    from any person, and permits discovery which may uncover assets of the judgment

2    debtor or otherwise aid in the enforcement of the judgment. *See, e.g., United States v.*

3    *Warren*, 99 Civ. 814, 2011 U.S. Dist. LEXIS 83314 (E.D. Cal. Jul. 29, 2011)

4    ("Generally, the scope of post-judgment discovery is broad. '[T]he judgment creditor

5    must be given the freedom to make a broad inquiry to discover hidden or concealed

6    assets of the judgment debtor.'" (citations and quotation marks omitted)); *NML Capital*

7    *Ltd. v. Republic of Argentina*, No. C 12-80185, 2012 U.S. Dist. LEXIS 149661 (N.D.

8    Cal. Oct. 17, 2012) (stating that "[b]road post-judgment discovery in aid of execution

9    is the norm in federal courts" and denying motion to quash subpoena issued against

10   third-party which sought discovery of judgment debtor's assets). Each of UBS'

11   requests seeks documents from Third Eye that would aid UBS in enforcing the

12   Judgment by identifying, *inter alia*, Aemetis' assets, Third Eye's purported security

13   interest over Aemetis' assets, and Third Eye's exercise of control over Aemetis' assets,

14   including over Aemetis' non-payment of the Judgment.

15         Third Eye objects to the subpoena on the grounds that the subpoena was not

16   served upon a custodian with actual possession of the relevant documents, and that no

17   one in California has control of or knowledge regarding the responsive documents.

18   Third Eye asserts that all of its business records are located in Ontario, Canada. Third

19   Eye's objections cite California state procedures and a California state case, which are

20   not applicable to subpoenas issued under the Federal Rules of Civil Procedure.[8] The

21   subpoena was issued in federal court under the Federal Rules of Civil Procedure, not

---

[8] Third Eye's "general objections" cite *Ariel v. Jones*, 693 F.2d 1058 (11th Cir. 1982) for the proposition that because "[n]o person at the address identified on the subpoena has actual possession or custody of the business records the subpoena requests," Third Eye is not required to produce those documents. The one case in the Ninth Circuit that has seriously considered the relevant holding of *Ariel* specifically rejected its interpretation of "control." *See In re Jee*, 104 B.R. 289 (Bankr. C.D. Cal. 1989) ("This court, however, does not choose to limit the meaning of the word 'control' to only those documents located within the forum district and controlled by the entity that was physically served with the subpoena. Instead, this court is of the opinion that such a limitation is improper in light of Federal Rules of Civil Procedure 1 and 30(b)(6)." (citation omitted)).

Maier Shoch LLP

1    under California state procedures.

2          Here, Third Eye has registered to do business in California, and the subpoena

3    concerns its relationship with Aemetis, a company headquartered in California.  Shoch

4    Decl. ¶2, Exhs. A, A-1.  In fact, counsel for Third Eye stated in a January 15, 2014 e-

5    mail that Third Eye holds liens over Aemetis' assets that are *located in California.*

6    Shoch Decl. ¶8, Exh. E.  Although Third Eye claims to have a presence in California to

7    enforce its lien over the assets of Aemetis, and Third Eye has registered to business in

8    California, Third Eye posits that it is not required to respond to a subpoena issued by a

9    United States District Court located in California.

10          It is black letter law that a federal subpoena may require a corporation subject to

11   the court's jurisdiction to produce documents located "beyond the territorial limits of

12   the court."[9]  *Securities and Exchange Commission v. Minas de Artemisa, S.A.*, 150

13   F.2d 215 (9th Cir. 1945) (subpoena served on Mexican corporation's president in

14   Arizona required production of books and papers located in Mexico); *see also In re*

15   *Harvard M. Jee*, 104 B.R. 289 (Bankr. C.D. Cal. 1989) (holding that subpoena reached

16   documents located outside of the forum, including documents located in Korea, and

17   stating that "[t]he fact that the documents are located in a country where their

18   discovery would be illegal does not mean that a United States court is without the

19   authority to compel the production of subpoenaed documents"); *First American Corp.*

20   *v. Price Waterhouse LLP*, 154 F.3d 16 (2d Cir. 1998) (rejecting U.K. company's

21   argument that discovery should be consigned to the discovery procedures outlined in

22   the Hague Convention, and affirming the district court's orders enforcing a document

23   subpoena against the U.K. company and holding that company in contempt for failure

24   to comply with the subpoena).  Therefore, the location of Third Eye's documents is

25   irrelevant, and Third Eye must produce the documents responsive to the subpoena.

26

27   _____

[9] Third Eye has not asserted that it is not subject to personal jurisdiction in the United States District
28       Court for the Central District of California.

Maier Shoch LLP

JOINT STIPULATION ON MOTION OF UBS SECURITIES LLC TO COMPEL THIRD EYE CAPITAL TO PRODUCE
DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM

**Third Eye's Contentions:**

This request is overly broad in that it seeks the production of "all documents concerning assets of Aemetis." Most likely, all documents in TEC's possession relating to its loan to Aemetis could be responsive to this request. The loan is secured by asserts of Aemetis. Information about revenues of Aemetis "concern assets of Aemetis." TEC is a Canadian entity formed pursuant to the laws of Ontario, Canada with its principal and only place of business in Toronto, Canada. Having to review and produce all of these documents in California would be a substantial hardship for TEC. As with all of UBS' requests, this request is drafted to be as broad as possible, with no attempt to focus on assets that could be used to satisfy the Judgment, or identify hidden assets.

**UBS Document Request No. 2:**

All documents concerning or comprising and form of agreement between Aemetis and Third Eye.

**Third Eye's Response to Document Request No. 2:**

TEC hereby incorporates all of the General Objections listed above as if stated fully herein. Furthermore, TEC objects to this request to the extent it calls for the production of attorney client privileged materials or work product. TEC objects to this request as it is overbroad and unduly burdensome in that among other things it calls for the production of electronically stored information in its native form. TEC objects on the grounds that the subpoena fails to provide adequate time to locate the documents sought. TEC objects that the documents sought would appear to be able to be obtained from the parties in lieu of burdening non-party Third Eye Capital. TEC further objects that it is principal place of business in in Toronto, Ontario, and all of the responsive documents are also in Toronto, Ontario. As a general rule, Canadian law does not permit third party discovery. Further, TEC's agent for service of process in California

1  does not have access to the documents requested.  To the extent TEC is required to

2  produce any documents in response to the subpoena, it hereby reserves its rights to

3  seek reimbursement for all costs and expenses involved in gathering the documents.

4

5  **UBS' Contentions:**

6      Third Eye's Response to Request No. 2 is exactly the same as its Response to

7  Request No. 1.  Please see UBS' Contentions re Document Request #1.  In particular,

8  agreements are important because of Third Eye's contentions as to its alleged security

9  interest.

10

11  **Third Eye's Contentions:**

12      This request is not directed to the production of information likely to lead to the

13  discovery of assets available to satisfy the Judgment.  The Note Purchase Agreements

14  are substantial and span 8 years.  The production of loan agreements, modifications,

15  amendments and restatements from six, seven or eight years earlier will not aid UBS to

16  obtain information about that will lead to satisfaction of the Judgment.  This request is

17  not drafted in a way to limit the substantial time and burden that would be imposed on

18  TEC if it has to search for and produce these documents.  Further, there is no doubt

19  that the relevant information is in the hands of Aemetis, the judgment debtor.

20

21  **UBS Document Request No. 3:**

22      All documents concerning or comprising any form of communication, including

23  but not limited to all e-mails, between Aemetis, or any representative of Aemetis, and

24  Third Eye, or any representative of Third Eye, that refer or relate, directly or indirectly,

25  to any or all of (i) UBS, (ii) services performed by UBS for Aemetis, (iii) payment or

26  possible payment by Aemetis to UBS, (iv) any litigation between UBS and Aemetis,

27  including 13-mc-80214 (CRB) (N.D. Cal.) and/or 12-cv-6359 (RA) (S.D.N.Y.), (v) the

28  settlement in *UBS Securities LLC v. Aemetis, Inc.*, 12-cv-6359 (RA) (S.D.N.Y.), (vi)

Maier Shoch LLP

12

JOINT STIPULATION ON MOTION OF UBS SECURITIES LLC TO COMPEL THIRD EYE CAPITAL TO PRODUCE
DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM

1 | the judgment in *UBS Securities LLC v. Aemetis, Inc.*, 12-cv-6359 (RA) (S.D.N.Y.)

2 | and/or (vii) payment of the judgment in *UBS Securities LLC v. Aemetis, Inc.*, 12-cv-

3 | 6359 (RA) (S.D.N.Y.).

4 |

5 | **Third Eye's Response to Document Request No. 3:**

6 | TEC hereby incorporates all of the General Objections listed above as if stated

7 | fully herein.  Furthermore, TEC objects to this request to the extent it calls for the

8 | production of attorney client privileged materials or work product.  TEC objects to this

9 | request as it is overbroad and unduly burdensome in that among other things it calls for

10 | the production of electronically stored information in its native form.  TEC objects on

11 | the grounds that the subpoena fails to provide adequate time to locate the documents

12 | sought.  TEC objects that the documents sought would appear to be able to be obtained

13 | from the parties in lieu of burdening non-party Third Eye Capital.  TEC further objects

14 | that it is principal place of business in in Toronto, Ontario, and all of the responsive

15 | documents are also in Toronto, Ontario.  As a general rule, Canadian law does not

16 | permit third party discovery.  Further, TEC's agent for service of process in California

17 | does not have access to the documents requested.  To the extent TEC is required to

18 | produce any documents in response to the subpoena, it hereby reserves its rights to

19 | seek reimbursement for all costs and expenses involved in gathering the documents.

20 |

21 | **UBS' Contentions:**

22 | Third Eye's Response to Request No. 3 is exactly the same as its Response to

23 | Request No. 1. Please see UBS' Contentions re Document Request #1.  In particular,

24 | UBS is entitled to explore why Aemetis, a public company, is not paying the lawful

25 | judgment of a United States District Court.

26 |

27 |

28 |

Maier Shoch LLP

JOINT STIPULATION ON MOTION OF UBS SECURITIES LLC TO COMPEL THIRD EYE CAPITAL TO PRODUCE
DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM

**Third Eye's Contentions:**

This request seeks the production of documents relating to the underlying litigation.  The case is over.  The Judgment has been awarded to UBS.  It is impossible to imagine a legitimate purpose behind the production of documents discussing concluded litigation.  There is no reason for TEC to go through its emails, documents and correspondence files in an attempt to find information relating to litigation that has been completed.

**UBS Document Request No. 4:**

All documents concerning payments or transfers of cash or consideration from Aemetis to Third Eye during the six years prior to entry of judgment in *UBS Securities LLC v. Aemetis, Inc.*, 12-cv-6359 (RA) (S.D.N.Y.) on October 9, 2013.

**Third Eye's Response to Document Request No. 4:**

TEC hereby incorporates all of the General Objections listed above as if stated fully herein.  Furthermore, TEC objects to this request to the extent it calls for the production of attorney client privileged materials or work product.  TEC objects to this request as it is overbroad and unduly burdensome in that among other things it calls for the production of electronically stored information in its native form.  TEC objects on the grounds that the subpoena fails to provide adequate time to locate the documents sought.  TEC objects that the documents sought would appear to be able to be obtained from the parties in lieu of burdening non-party Third Eye Capital.  TEC further objects that it is principal place of business in in Toronto, Ontario, and all of the responsive documents are also in Toronto, Ontario.  As a general rule, Canadian law does not permit third party discovery.  Further, TEC's agent for service of process in California does not have access to the documents requested.  To the extent TEC is required to produce any documents in response to the subpoena, it hereby reserves its rights to seek reimbursement for all costs and expenses involved in gathering the documents.

Maier Shoch LLP

**UBS' Contentions:**

Third Eye's Response to Request No. 4 is exactly the same as its Response to Request No. 1. Please see UBS' Contentions re Document Request #1. In addition, UBS is entitled to explore fraudulent conveyances.

**Third Eye's Contentions:**

This request would require TEC to search for documentation of each and every advance, payment or debit throughout a six year history of the Credit Agreements. The work to do this would be extremely time-consuming and could potentially cripple a small company like TEC. Further, it is impossible to fathom how funds advanced 8 years earlier by Aemetis' lender could lead to the discovery of assets today. Clearly, UBS has a different agenda here. A sophisticated institution such as UBS is well aware that advances made under a loan agreement six years prior to entry of the Judgment are not going to lead to the production of relevant information. To the contrary, it appears UBS is trying to obtain this information for an inappropriate or ulterior motive. This is inappropriate and should not be permitted.

**UBS Document Request No. 5:**

All documents concerning or comprising requests by Aemetis to Third Eye for permission or authorization for Aemetis to pay a third party.

**Third Eye's Response to Document Request No. 5:**

TEC hereby incorporates all of the General Objections listed above as if stated fully herein. Furthermore, TEC objects to this request to the extent it calls for the production of attorney client privileged materials or work product. TEC objects to this request as it is overbroad and unduly burdensome in that among other things it calls for the production of electronically stored information in its native form. TEC objects on the grounds that the subpoena fails to provide adequate time to locate the documents

15

Maier Shoeb LLP

JOINT STIPULATION ON MOTION OF UBS SECURITIES LLC TO COMPEL THIRD EYE CAPITAL TO PRODUCE
DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM

sought.  TEC objects that the documents sought would appear to be able to be obtained from the parties in lieu of burdening non-party Third Eye Capital.  TEC further objects that it is principal place of business in in Toronto, Ontario, and all of the responsive documents are also in Toronto, Ontario.  As a general rule, Canadian law does not permit third party discovery.  Further, TEC's agent for service of process in California does not have access to the documents requested.  To the extent TEC is required to produce any documents in response to the subpoena, it hereby reserves its rights to seek reimbursement for all costs and expenses involved in gathering the documents.

### UBS' Contentions:

Third Eye's Response to Request No. 5 is exactly the same as its Response to Request No. 1. Please see UBS' Contentions re Document Requests #1 and 3.

### Third Eye's Contentions:

This request does not seek information relating to assets of Aemetis.  Like the other requests, this request signifies UBS' true intention, which is to conduct some type of a fishing expedition to assert the baseless argument that TEC is exercising authority over Aemetis.  For argument's sake, were one to assume that correspondence of this nature existed, this correspondence would not provide any insight with respect to assets available to the Judgment.  This request, like the others, should be seen for what it really is, an impressible fishing expedition brought to burden an important an important business partner of Aemetis.

## IV.   UBS SECURITIES LLC'S CONCLUSION

Third Eye should be ordered to produce all documents responsive to Requests 1 through 5 forthwith.

Maier Shoch LLP

1  ## V.    THIRD EYE CAPITAL'S CONCLUSION

2       For the reasons stated above, TEC and the Lenders should be relieved from

3  having to produce documents responsive to the subpoena.

4  DATED:  May 16, 2014

5                              MAIER SHOCH LLP

6

7                              By: _____

8                                     Louis E. Shoch

9                              Attorneys for
                            UBS Securities LLC

10

11

12  DATED:  May 16, 2014

13                              THE SITTLER LAW GROUP

14

15                              By: _____

16                                     Ronald Sittler

17                              Attorneys for
                            Third Eye Capital Corporation

18

19

20

21

22

23

24

25

26

27

28

Maier Shoch LLP

JOINT STIPULATION ON MOTION OF UBS SECURITIES LLC TO COMPEL THIRD EYE CAPITAL TO PRODUCE
DOCUMENTS IN RESPONSE TO SUBPOENA DUCES TECUM